Opinion
 

 WISEMAN, J.
 

 Anyone who has ever worked in an office or, for that matter, been a schoolchild on the playground knows that petty differences arise which cannot always be resolved without hurt feelings. Does that mean that these festering disputes in the workplace should find their way into the courts for resolution? Absolutely not. This case is a prime example of where such work-related differences have no place in the courtroom.
 

 Raymond Guthrey obviously did not get along with his immediate supervisor, Loreen Lucas. Right or wrong, he was irritated by such things as
 
 *1111
 
 having to keep his office door open and desk positioned so she could see him from her desk across the hall; for being reprimanded in front of his peers for taking a roundabout trip to a correctional camp which included a stop for gambling; for not receiving interest letters to promote when others received such letters in spite of the fact he was not on the certified list for a “limited term” position for which the letters were sent; and for not being able to put his feet on his desk and having to keep overhead lights turned on. These factors, and others, led him to believe he was being harassed and subjected to a hostile work environment due to his gender. In reliance on these beliefs, his attorney filed a complaint adopting the “kitchen sink” approach of throwing in almost every possible cause of action including discipline in violation of public policy, retaliation, employment discrimination, slander and two counts of invasion of privacy. The initial complaint was filed against the State of California (State), the California Department of Corrections (CDC), the Sierra Conservation Center (SCC), CDC’s Director James Gomez (Gomez), and nearly every employee who ever came close to the alleged grievances suffered by Guthrey.
 

 By the time the discovery dust had settled, Guthrey’s own deposition testimony revealed that his case was going nowhere fast. Predictably, a motion for summary judgment was filed by the remaining defendants. By this time, five original defendants had been dismissed with prejudice. Parenthetically, we observe it is seldom a good sign for a plaintiff when counsel must defend a motion for summary judgment by submitting plaintiff’s own declaration to impeach plaintiff’s previous deposition testimony. Not surprisingly, the trial court granted the motion. Undaunted, Guthrey filed an appeal.
 

 Matters did not improve. Guthrey’s attorney proceeded to submit an opening brief contending there was “a plethora of admissible evidence” indicating a triable issue of fact existed on his claims of gender discrimination, hostile gender-based harassment, and retaliation. Unfortunately for Guthrey, his attorney failed to comply with basic appellate legal principles which require citation to the record for evidentiary support. To make matters worse, during oral argument his attorney made inappropriate references to numerous documents and witness declarations, none of which were admitted as evidence. Suffice it to say, there is absolutely no evidence in the record that we could find which supports a finding that Guthrey has even established a prima facie case for any of his claims. We therefore affirm the trial court’s order granting defendants attorney fees in the amount of $64,796.50. We further grant defendants’ request for attorney fees on appeal.
 

 In light of the increasing number of employment discrimination cases coming before our court, we publish simply to alert the bar of the serious
 
 *1112
 
 consequences to the plaintiff, and perhaps to his or her counsel (if sanctions for filing a frivolous appeal are requested or are granted sua sponte), which might attend the filing and prosecution of employment discrimination cases that are obviously baseless.
 

 Procedural History
 

 On November 2, 1994, plaintiff Guthrey filed a verified complaint for damages suffered for discipline in violation of public policy, employment discrimination, slander, and two counts of invasion of privacy. He named as defendants the State, CDC, SCC, Gomez, and CDC employees Loreen Lucas (Lucas), Robert Shelton, William Heise, Jerry Stocker, Carol Pinkins, and Debra Jacobs.
 

 The defendants filed a demurrer on various grounds to each cause of action except for employment discrimination. The demurrer was sustained with leave to amend on the ground plaintiff failed to exhaust his administrative remedies with the State Board of Control as required by the California Tort Claims Act. Plaintiff did not file an amended complaint.
 

 On June 5, 1995, defendants filed an answer to the complaint on the remaining cause of action, denying most of its allegations and asserting 15 affirmative defenses.
 

 On July 6, 1995, plaintiff requested dismissal with prejudice of the following defendants from the lawsuit: William Heise, Jerry Stocker, Carol Pinkins, Debra Jacobs, and Gomez. Dismissal was entered that same day.
 

 On August 28, 1995, a motion for summary judgment was made by the remaining defendants (State, CDC, SCC, Lucas, and Shelton). Plaintiff filed an opposition and response to the motion on September 12, 1995. Defendants filed a reply to plaintiff’s response, and objections to plaintiff’s evidence concerning the motion for summary judgment on September 21, 1995.
 

 The trial court granted the motion finding that plaintiff failed to present any admissible evidence to dispute the defendants’ referenced facts. Upon request by defendants, the court specifically ruled on their objections regarding plaintiff’s proffered evidence which the court had found inadmissible. Plaintiff filed an objection to the request with no points and authorities, but did not request a hearing. On October 23, 1995, the court order regarding defendants’ objections to plaintiff’s evidence was filed.
 

 On December 12, 1995, judgment for defendants was entered, and notice of entry of judgment was filed on February 22, 1996.
 

 
 *1113
 
 On June 3, 1996, an order was filed granting defendants’ motion for attorney fees and denying plaintiff’s motion to tax costs.
 

 Timely notices of appeal were filed from the judgment and the order awarding attorney fees. The appeal from the award of attorney fees (F026734) was ordered consolidated with the appeal from the judgment (F025848).
 

 Factual History
 

 Plaintiff is a male hired as a Correctional Counselor I by CDC in November of 1986. Since that time, plaintiff has either met or exceeded the expected standards of job performance in his regularly scheduled evaluations. On June 28, 1993, plaintiff was assigned to SCC located in Jamestown. In that position he did work regarding inmates in conservation camps located away from SCC. As a camp counselor, plaintiff worked in an office with three other counselors—one man and two women—who were supervised by defendant Lucas. Defendant Shelton was the camp program administrator and Lucas’s supervisor.
 

 Lucas implemented routine procedures and policies for her employees which were applied equally to men and women in the office. These included leaving the office doors open, that personnel sign out before leaving the office, and that employees who “flexed” their time and came to work earlier than Lucas punch a time clock.
 

 On November 2, 1993, plaintiff traveled to camp 26 located in Bishop, California, via Highway 88, staying one night in Minden, Nevada. On November 4, plaintiff returned from camp 26 over Highway 108. Plaintiff admitted he did not call California Department of Transportation (Caltrans) or inquire about road conditions, and he took the longer three-day route even though the mountain passes were open. Plaintiff admitted the weather was clear and warm on November 2, the day he left SCC and traveled to camp 26. On his return, plaintiff told Lucas he had not checked road conditions and had taken “some leeway in the time frame” on his trip.
 

 On December 3, 1993, Lucas wrote a memorandum to Associate Warden Heise requesting that a formal investigation be conducted, and that plaintiff be disciplined. Heise agreed and recommended to Warden Ingle that this action be taken, and Ingle authorized the investigation.
 

 An investigation by CDC was undertaken, including an interview of plaintiff on December 22, 1993. A report was issued on January 14, 1994,
 
 *1114
 
 which found that plaintiff had committed eight serious violations, including insubordination and dishonesty, inefficiency and inexcusable absence without leave. Plaintiff does not claim the internal investigation was handled in a discriminatory manner.
 

 A notice of adverse action was issued on March 4, 1994, by Warden Ingle finding that plaintiff had committed several serious violations including insubordination and dishonesty.
 
 [1]
 
 He imposed a pay cut of 5 percent for six months. Following a “Skelly hearing”
 
 (Skelly
 
 v.
 
 State Personnel Bd.
 
 (1975) 15 Cal.3d 194 [125 Cal.Rptr. 14, 539 P.2d 774]) Warden Ingle reduced the penalty to a letter of reprimand.
 

 Immediately following his interview on December 22, 1993, plaintiff left work on stress leave until January 31, 1994. Plaintiff filed his first complaint alleging gender discrimination on December 26, 1993. CDC denied the complaint for insufficient evidence. Plaintiff appealed to the State Personnel Board, and that board denied the appeal.
 

 Even after plaintiff received the letter of reprimand, CDC continued to need his services as a camp counselor.
 

 Discussion
 

 I.
 
 The summary judgment motion
 

 Plaintiff’s brief fails to present any issue with respect to the summary judgment, and in any event, the trial court properly granted the motion for summary judgment.
 

 Plaintiff contends the trial court’s decision to grant defendant’s motion for summary judgment must be reversed. He argues he “has adduced a plethora of admissible evidence indicating that triable issues exist on the issue of pretext, the issue of animus based on impermissible considerations of retaliation for engaging in protected conduct in seeking a Skelly hearing, the issue
 
 *1115
 
 of disparate treatment since he was treated differently from his female co-workers by his female supervisor (after significant changes in his employment occurred when his female supervisor’s tenure began) and the issues of concomitant hostile gender-based harassment.” Plaintiff’s contentions are frivolous.
 

 A., B.
 
 *
 

 C.
 
 Waiver
 

 Defendants correctly contend that plaintiff’s brief fails to present any issue pertaining to the summary judgment motion because he cites only general legal principles without relating them to any specific facts or admissible evidence. As a general rule, “The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.” (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p. 627;
 
 Mansell
 
 v.
 
 Board of Administration
 
 (1994) 30 Cal.App.4th 539, 545 [35 Cal.Rptr.2d 574].) It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant’s contentions on appeal. (9 Witkin, Cal. Procedure,
 
 supra,
 
 Appeal, § 589, p. 624.) If no citation “is furnished on a particular point, the court may treat it as waived.” (9 Witkin, Cal. Procedure,
 
 supra,
 
 Appeal, § 594, p. 627.) We find this is an appropriate case in which to apply the waiver rule.
 

 Plaintiff contends “a plethora of admissible evidence” indicates a triable issue of fact exists on his claims of gender discrimination, hostile gender-based harassment, and retaliation. However, plaintiff fails to identify this evidence and where it can be found in the record. In his reply brief, plaintiff again repeats that he presents “ample direct and circumstantial admissible evidence.” Plaintiff cites to his opening brief at pages “30-36 and record citations therein.” However, a review of pages 30-36 of plaintiff’s opening brief reveals only one record citation to page 155 of the clerk’s transcript, to footnote 11 of defendants’ points and authorities in support of their motion for summary judgment. This reference obviously is not to admissible evidence in the record that indicates a triable issue of fact exists.
 
 [2]
 

 “ ‘ “Instead of a fair and sincere effort to show that the trial court was wrong, appellant’s brief is a mere challenge to respondents to prove that the
 
 *1116
 
 court was right.” ’ ”
 
 (People
 
 v.
 
 Dougherty
 
 (1982) 138 Cal.App.3d 278, 283 [188 Cal.Rptr. 123].) Therefore, plaintiff’s contention that the trial court erred by granting defendants’ motion for summary judgment is deemed waived. (Ibid.;
 
 Landry
 
 v.
 
 Berryessa Union School Dist.
 
 (1995) 39 Cal.App.4th 691, 699-700 [46 Cal.Rptr.2d 119] [appellant cited only general principles governing the motion without applying those principles to the circumstances before the court, and therefore appellant’s contention was deemed abandoned];
 
 Mansell
 
 v.
 
 Board of Administration, supra,
 
 30 Cal.App.4th at p. 545 [“We are not required to search the record to ascertain whether it contains support for [appellant’s] contentions”];
 
 Dills
 
 v.
 
 Redwoods Associates, Ltd.
 
 (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838] [“We will not develop the appellants’ arguments for them”];
 
 In re Marriage of Schroeder
 
 (1987) 192 Cal.App.3d 1154, 1164 [238 Cal.Rptr. 12] [“This court is not inclined to act as counsel for him or any appellant”];
 
 Green
 
 v.
 
 Green
 
 (1963) 215 Cal.App.2d 31, 35 [30 Cal.Rptr. 30].)
 

 D.
 
 The evidence
 

 While we summarily reject plaintiff’s contention attacking the ruling on the summary judgment motion for failure to provide adequate briefing, it is still necessary to review the record to determine (1) whether the court’s decision to grant attorney fees is supported; and (2) whether attorney fees on appeal should be granted.
 

 A review of the record reveals that the reason counsel fails to cite any admissible evidence in the record to support his theory of employment discrimination is because none exists. Plaintiff made certain allegations in his complaint that he contends support his cause of action for employment discrimination. We consider each ¿legation.
 

 1)
 
 On the day he was assigned to camp operations under the supervision of Lucas, she informed him she did not want him in the camp program.
 

 In his deposition testimony plaintiff testified Lucas did not state who she preferred for the position, whether male or female. He also stated he did not understand Lucas’s statement to mean she preferred a female. According to Lucas’s declaration, she did not have a preference for a female in plaintiff’s position.
 

 
 *1117
 
 2)
 
 Lucas required plaintiff and his male office partner to keep their office door open and position their desks so she could view them from her desk across the hall.
 

 It is undisputed that Lucas implemented routine office procedures and policies for her employees which were applied equally to men and women. These included leaving the office doors open, that personnel sign out before leaving the office, and persons who “flexed” their time and came to work earlier than Lucas punch a time clock. Further, plaintiff has admitted that all employees under Lucas’s supervision were required to follow these rules and they did not amount to sexual discrimination.
 
 [3]
 

 3)
 
 Lucas berated plaintiff in front of his peers in a loud and aggressive manner regarding his three-day trip to camp 26 in November of 1993.
 

 As found by the internal affairs investigation, plaintiff disobeyed Lucas’s and Heise’s orders that he take the three-day trip only if the passes over highways 120 and 108 were closed. In his deposition, plaintiff admitted he understood that his plan to take three days for that trip was approved only if the passes were closed, and before he left he was required to contact Caltrans to check the road conditions. Plaintiff admitted he did not call Caltrans or make any kind of inquiry regarding the weather or road conditions. In fact, both passes were open. Still, plaintiff took the longer three-day route.
 

 Plaintiff made the first leg of the trip to camp 26 on November 2, 1993, traveling from SCC to Minden, Nevada. He checked into his hotel room about 1 p.m., and then went off duty for the rest of the day. While off duty, plaintiff played Keno in the hotel casino. Plaintiff falsely reported to Lucas that he could not check into his room until 3 p.m., and he spent the extra two hours working. Plaintiff admitted in his deposition, however, that he falsified his time sheets for November 2 and 3, 1993, and did not work the amount of time he reported.
 

 When plaintiff arrived at SCC, Lucas asked him to come to her office right away. Plaintiff did so, and Lucas asked him behind closed doors, “Why did you take the longer route, when the weather was so good?” Plaintiff responded, “Because that is what I was approved to do, and I was apprehensive about that trip, and I took that route for the first time as that is what I
 
 *1118
 
 was instructed to do.” Lucas then asked, “Did you check, did you call Caltrans to see if the passes were open?” Plaintiff responded, “No, I didn’t.” Lucas then advised plaintiff that Heise would require a report on why plaintiff took the longer route instead of the shorter route. Plaintiff considered his conversation with Lucas to be harassment because he felt her attitude “was very aggressive, and she was real red in her face.”
 

 The foregoing might raise a question of fact whether Lucas’s aggression reached the level of unwarranted hostility or whether her inquiry was completely appropriate. Either way, nothing suggests Lucas handled the matter the way she did because of plaintiff’s gender. (2) The mere fact Lucas is a female and plaintiff a male does not give rise to the inference that her alleged aggressive conduct was motivated by a desire to discriminate on the basis of gender. Without some evidence to make such an inference a reasonable one, it is mere speculation to suspect gender discrimination led to Lucas’s allegedly hostile conduct. Speculation is insufficient.
 
 (Hersant
 
 v.
 
 Department of Social Services
 
 (1997) 57 Cal.App.4th 997, 1009 [67 Cal.Rptr.2d 483].) “The plaintiff must produce evidence which permits an inference of illegal intentional discrimination.”
 
 (Heard
 
 v.
 
 Lockheed Missiles & Space Co.
 
 (1996) 44 Cal.App.4th 1735, 1755 [52 Cal.Rptr.2d 620].)
 

 4)
 
 Plaintiff disputed Lucas’s “allegations” and threatened to file a complaint with his representative of the correctional officers’ association.
 

 This allegation is undisputed.
 

 5)
 
 Lucas disregarded the proper procedures and immediately requested an investigation which could lead to adverse action against plaintiff.
 

 After plaintiff filed a report to Heise which contained false statements and an inadequate explanation, Lucas wrote Heise a memorandum asking him to request an investigation be conducted. Heise then made the request to Warden Ingle, who authorized the investigation. There is no evidence that Lucas disregarded “proper procedures.” The only evidence addressing proper procedures is that as a supervisor, Lucas had a responsibility to advise her superiors of serious misconduct by employees working under her supervision, and only the warden can authorize an internal affairs investigation at SCC. As detailed above, Lucas followed these procedures.
 

 6)
 
 Plaintiff made complaints and advised Lucas’s supervisors concerning her aggression and hostility toward male employees. Defendants Shelton and Heise knew or should have known of Lucas’s aggression and hostility toward males under her supervision, but did nothing to prevent such activities and failed to take corrective action.
 

 
 *1119
 
 There is no admissible evidence that Lucas was aggressive and hostile toward males under her supervision. Further, plaintiff admitted he never complained to anyone that he was the victim of sexual discrimination or harassment prior to the investigation.
 

 Immediately following his investigatory interview on December 22, 1993, plaintiff went on stress leave for six weeks. On December 26, he filed a discrimination and harassment complaint which CDC denied for insufficient evidence. He appealed to the State Personnel Board, which also denied his claim.
 

 Plaintiff makes no specific allegations of sexual discrimination or harassment against Shelton. Instead, he has admitted Shelton never engaged in any activity that amounted to sexual discrimination against him and did nothing adverse to him because he was male. Plaintiff admitted he never asked Shelton to do anything and that he never complained to anyone about Shelton. Heise was dismissed as a defendant by plaintiff. Plaintiff also admitted that Heise did not do or say anything with respect to the investigation that amounted to sexual discrimination.
 

 The evidence offered to support plaintiff’s gender discrimination contention includes plaintiff’s declaration and the declarations of other employees who had worked under Lucas. However, these declarations were objected to and the trial court sustained the objections. Specifically, defendants objected that the declarations of Joe Androtti, Ivan Weightman, and Caesar Alcardo contained conclusory assertions that they had been discriminated against, with no specific facts to support them. Also, defendants objected that none of these declarations contained specific statements concerning plaintiff. These objections were sustained. Plaintiff does not argue that the objections should not have been sustained.
 
 [4]
 
 Further, it is clear the declarations were properly excluded since they were purely conclusional and based on opinion, not facts.
 

 A motion for summary judgment must be decided on admissible evidence in the form of affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice may be
 
 *1120
 
 taken.
 
 (Hayman
 
 v.
 
 Block
 
 (1986) 176 Cal.App.3d 629, 638 [222 Cal.Rptr. 293].) As noted in
 
 Hayman, supra,
 
 at pages 638-639:
 

 “Personal knowledge and competency must be shown in the supporting and opposing affidavits and declarations. [Citations.]
 

 “The affidavits must cite evidentiary facts, not legal conclusions or ‘ultimate’ facts. [Citation.]
 

 “Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as hearsay, conclusions or impermissible opinions, must be disregarded in supporting affidavits. [Citation.]”
 
 *1121
 
 forum.
 
 (Knickerbocker
 
 v.
 
 City of Stockton, supra,
 
 199 Cal.App.3d at pp. 242-244.)
 

 
 *1120
 
 Similarly, plaintiff’s declaration was objectionable because it was based on opinion and conclusions instead of evidentiary facts. Some of plaintiff’s statements in the declaration were contradicted by his own deposition testimony. ' A party cannot evade summary judgment by submitting a declaration contradicting his own prior deposition testimony.
 
 (D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1, 21-22 [112 Cal.Rptr. 786, 520 P.2d 10];
 
 Visueta
 
 v.
 
 General Motors Corp.
 
 (1991) 234 Cal.App.3d 1609, 1613 [286 Cal.Rptr. 402] [“Admissions or concessions made during the course of discovery govern and control over contrary declarations lodged at a hearing on a motion for summary judgment”];
 
 Leasman
 
 v.
 
 Beech Aircraft Corp.
 
 (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768] [“. . . the credibility of [deposition] admissions are valued so highly that the controverting affidavits may be disregarded as irrelevant, inadmissible or evasive”].) Finally, some of his statements were regarding matters which had been adjudicated administratively against him, and thus collateral estoppel principles applied. (See
 
 Knickerbocker
 
 v.
 
 City of Stockton
 
 (1988) 199 Cal.App.3d 235, 242-244 [244 Cal.Rptr. 764].) Consequently, most of plaintiff’s declaration is inadmissible, and he does not specifically attempt to show the trial court erred in sustaining particular objections to it. Nonetheless, we examine a representative sampling to illustrate that plaintiff’s declaration was, for the most part, inadmissible as evidence. For example, plaintiff declared:
 

 Paragraph 12: “I was given a Letter of Reprimand,
 
 harassed, and subjected to a hostile work environment due to my gender.”
 
 (Italics added.) No facts support the highlighted conclusion.
 

 Paragraph 13: “After I received a Letter of Reprimand
 
 and was harassed,
 
 my employer continued to need the services of a CCI.” (Italics added.) Again, no facts support this conclusion.
 

 Paragraphs 14-16 and 20-29 all relate to the disciplinary action and plaintiff was collaterally estopped to relitigate the issues in a different
 

 
 *1121
 
 Paragraph 19: “Lucas forced my male office partner off on stress due to disparate treatment, then turned her attention to me.” No facts support this conclusion, and it is apparent plaintiff has no personal knowledge regarding why his partner went “off on stress.”
 

 Paragraphs 30-31 state that Lucas applied different standards to women. However, the documents referenced in support of the statements, the time sheets of two female employees (Charlene Davidson and Janet Tennison) do not support the statements and were not properly authenticated for evidentiary purposes.
 
 [5]
 

 Indeed, plaintiff admitted in his deposition that he had no evidence Lucas treated him less favorably than a female under comparable circumstances. He further acknowledged he did not know of any instance in which Lucas condoned the failure of Charlene Davidson or Janet Tennison to obey Lucas’s orders. Plaintiff further admitted he knew of no instance in which Lucas condoned the failure of any female to obey orders.
 

 In short, plaintiff’s complaints can be summed up by his testimony relating to the issue of office lighting. Lucas wanted the staff to keep the office’s overhead lights illuminated. Plaintiff acknowledged Lucas did not admonish the two female staff members about their overhead lights for the simple reason they kept them turned on. The following colloquy occurred:
 

 “Q You still sort of dodged my question. I am trying to figure out how you can equate a supervisor indicating that she prefers to have overhead lights on, nevertheless letting you keep them off, with sexual discrimination when the issue, as I understand it from what you said, was never joined with the women who worked in the office?
 

 “A If it was a male supervisor, I would have just considered it a hostile work environment. Her being the opposite gender, and given the experiences
 
 *1122
 
 I’ve had with her in the past starting with June 28th, it was my conclusion, my perception, that it was discrimination.
 

 “Q So you’re saying merely because of the fact that she was a female, as opposed to a male saying that, you equated that with sexual discrimination?
 

 “A That was my perception.”
 

 Later, plaintiff was asked: “So on one occasion, [Lucas] asked you to remove your feet from the top of the desk, and that you are alleging is an act of sexual discrimination?” Plaintiff responded: “It’s my perception. I could wear pants and put my feet up there, and she couldn’t. That is my perception.”
 

 Finally, plaintiff testified:
 

 “Q Did you ever ask Ms. Lucas why she moved her office?
 

 “A No.
 

 “Q So are you contending that moving her office down the hall, for whatever reason, in and of itself amounts to an act of sexual discrimination?
 

 “A Given all the other events, it was my perception it was.
 

 “Q Was it your perception at that time after two weeks?
 

 “A No, I didn’t pick up on that. I didn’t think that that was happening— hostile, yes, hostile work environment, but not discrimination. Didn’t get that yet.
 

 “Q What is your notion of ‘hostile work environment’ ?
 

 “A Being intimidated and uncomfortable in my workplace, having anxiety of working there. I haven’t had that experience in 20 years of professional work; 1 feeling anxiety going to a workplace like I was with her. That is my interpretation of a ‘hostile work environment.’ ”
 

 As already noted, plaintiff’s perception he was being discriminated against because of his gender has no factual or evidentiary support. He failed in attempting to establish a prima facie case of gender discrimination. Further, his interpretation of a “hostile work environment due to sexual harassment” is without legal foundation. The elements of the cause of action are: “(1) [p]laintiff belongs to a protected group; (2) plaintiff was
 
 *1123
 
 subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior.”
 
 (Fisher
 
 v.
 
 San Pedro Peninsula Hospital
 
 (1989) 214 Cal.App.3d 590, 608 [262 Cal.Rptr. 842], fn. omitted.) To be sufficiently pervasive harassment, the acts complained of cannot be isolated or trivial. Rather, there must be a pattern of harassment of a routine or generalized nature.
 
 (Id.
 
 at p. 610.)
 

 “Courts have concluded that a hostile work environment existed where there was a pattern of continuous, pervasive harassment. (See e.g.,
 
 Meritor Savings Bank
 
 v.
 
 Vinson
 
 [(1986)]
 
 All
 
 U.S. 47, 60 [91 L.Ed.2d 49, 55] [The plaintiff had agreed to 40 or 50 acts of intercourse with her supervisor after repeated demands for sexual favors. The supervisor also ‘fondled her in front of other employees, followed her into the women’s restroom when she went there alone, exposed himself to her, and even forcibly raped her on several occasions.’];
 
 Hall
 
 v.
 
 Gus Const. Co., Inc.
 
 (8th Cir. 1988) 842 F.2d 1010, 1012 [constant verbal abuse, requests for sexual relations, unwanted touching directed to female traffic controllers at construction site and urinating in plaintiffs’ water bottles and gas tank.];
 
 Broderick
 
 v.
 
 Ruder
 
 [(D.D.C. 1988)] 685 F.Supp. 1269, 1277-78 [Plaintiff, who was sexually harassed by several male supervisors, showed pervasive nature of conduct by establishing that employer afforded preferential treatment to female employees who submitted to sexual advances or other sexual conduct and such conduct was a matter of common knowledge.];
 
 Yates
 
 v.
 
 Avco Corp.
 
 (6th Cir. 1987) 819 F.2d 630, 632 [supervisors’ constant rude comments to and requests for sexual favors from plaintiffs];
 
 Katz
 
 v.
 
 Dole
 
 (4th Cir. 1983) 709 F.2d 251, 254 [coworkers’ systematic infliction of extremely vulgar and offensive sexual slurs and insults to a female air traffic controller];
 
 Henson
 
 v.
 
 City of Dundee
 
 [(11th Cir. 1982)] 682 F.2d 897 [police chief’s numerous harangues and demeaning sexual inquiries and vulgarities as well as repeated requests that plaintiff have sexual relations with him];
 
 Bundy
 
 v.
 
 Jackson
 
 [(D.C. Cir. 1981)] 641 F.2d 934, 940, 943 [205 App.D.C. 444] [Sexually stereotyped insults such as “ ‘any man in his right mind would want to rape you’ ” and propositions directed to plaintiff by her supervisors over a two-year period amounted to the “standard operating procedure” of the agency.].) :
 
 *1124
 
 plaintiff and nude photos were present, totality of the workplace was not affected.];
 
 Scott
 
 v.
 
 Sears, Roebuck & Co.
 
 (7th Cir. 1986) 798 F.2d 210, 214 [isolated winks, suggestive remarks and a coworker’s single request for a date with plaintiff];
 
 Downes
 
 v.
 
 F.A.A.
 
 [(Fed. Cir. 1985)] 775 F.2d 288, 293 [Defendant engaged in mildly offensive verbal conduct on three occasions and twice touched plaintiff’s hair.].)
 

 
 *1123
 
 “On the other hand, courts have concluded that isolated instances of sexual harassment do not constitute a hostile work environment. (See, e.g.,
 
 Jones
 
 v.
 
 Flagship Intern.
 
 [(5th Cir. 1986)] 793 F.2d 714, 716 [supervisor’s two suggestive remarks and a single proposition of plaintiff];
 
 Rabidue
 
 v.
 
 Osceola Refining Co.
 
 (6th Cir. 1986) 805 F.2d 611, 615, 622 [Even though coworker was extremely vulgar and crude and in confrontation posture with
 

 
 *1124
 
 “FEHC has likewise found environmental sexual harassment in cases where a pattern of continuous harassment existed. (See e.g.,
 
 DFEH
 
 v.
 
 Fresno Hilton Hotel
 
 (1984) FEHC No. 84-03 [Complainant’s supervisor harassed her virtually every day for nine months by making repeated demands for sexual favors and by fondling and kissing her.];
 
 DFEH
 
 v.
 
 Del Mar Avionics
 
 (1985) FEHC No. 85-19 [Supervisor engaged in ‘regular stream’ of sexual and racial comments including one particularly vulgar verbal attack.];
 
 DFEH
 
 v.
 
 Jack’s Restaurant
 
 (1984) FEHC No. 84-08 [restaurant owner’s numerous sexually suggestive and explicit comments, fondling of and repeated requests for dates with complainant waitress over a period of approximately one year];
 
 DFEH
 
 v.
 
 Bee Hive Answering Service
 
 [(1984)] FEHC No. 84-16 [incessant stream of sexual comments, unwanted touchings and propositions directed to plaintiff as well as outbursts of rage upon rejection];
 
 DFEH
 
 v.
 
 Hart and Starkey Inc.
 
 (1984) FEHC No. 84-23 [Four complainants were constantly subjected to supervisor’s sexual comments, unwanted touchings and explicit propositions.];
 
 DFEH
 
 v.
 
 Rockwell International Corp.
 
 (1987) FEHC No. 87-34 [supervisor’s repeated sexual comments about and directed to complainant and repeated requests that complainant go out with him].)”
 
 (Fisher
 
 v.
 
 San Pedro Peninsula: Hospital, supra,
 
 214 Cal.App.3d at pp. 611-612.)
 

 As can be seen from the above examples, plaintiff’s lawsuit for sexual or gender-based harassment founded on the trivial and occasional acts alleged by him, none of which are alleged to be sexual in nature and all of which are objectively gender-neutral, is frivolous.
 

 7)
 
 Defendant Stocker failed to conduct a fair investigation.
 

 This allegation has been abandoned, and Stocker was dismissed as a defendant by plaintiff. Plaintiff admitted Stocker never engaged in sexual discrimination against him. He also admitted there was nothing that indicated the people who did the investigation conducted it in a discriminatory manner.
 

 8)
 
 Defendant Pinkins denied plaintiff access to an equal employment opportunity counselor to resolve his complaint.
 

 
 *1125
 
 Plaintiff dismissed defendant Pinkins from the lawsuit and has abandoned this allegation. To the extent plaintiff has not abandoned it, he has presented no evidence to support it.
 

 9)
 
 Defendant Gomez appointed Philip Friedman to investigate plaintiffs discrimination complaint. Friedman’s investigation was done in a negligent and inadequate manner.
 

 Plaintiff dismissed defendant Gomez from the lawsuit, and has abandoned this allegation.
 

 10)
 
 Defendant Jacobs obtained medical information, which she changed, thus forcing plaintiff to shave his beard despite a medical evaluation that plaintiff not shave due to an allergy.
 

 Plaintiff dismissed defendant Jacobs from the lawsuit, and has abandoned this allegation.
 

 E.
 
 Retaliation
 

 “To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two.”
 
 (Fisher
 
 v.
 
 San Pedro Peninsula Hospital, supra,
 
 214 Cal.App.3d at p. 614.)
 

 Plaintiff alleged he engaged in the protected activity of filing a gender discrimination complaint, which he filed on December 26, 1993. This was after his misconduct investigation was well under way.
 

 With respect to having been subjected to adverse employment action by his employer, plaintiff alleged:
 

 11)
 
 SCC sent out interest letters for the position of correctional counselor II during 1994, but did not send one to plaintiff.
 

 Interest letters are sent by CDC to its employees inquiring about their desire to be considered for' other job opportunities. Plaintiff admitted at his deposition that he had received 150 interest letters, and returned them expressing no interest. (“Q And then once you got the letter of reprimand in your file, you stopped responding? [¶] A Yeah.”)
 

 Even though plaintiff conceded at his deposition that he had no other basis for his retaliation claim, he nonetheless asserted in his declaration that since
 
 *1126
 
 December 23, 1993, he had not received a job performance rating, and his employer failed to notify him of two correctional counselor II vacancies in 1994. However, the record shows plaintiff has received job performance ratings since that date. Regarding his failure to receive notification of the two vacancies, no letters were sent out with respect to one position. Instead, the notice was posted on June 7, 1994, at SCC, plaintiff’s place of employment. Further, plaintiff was not entitled to receive any letters with respect to either position because he had stated that he did not want to be on the certified list for a “limited term” position for which the letters were sent out.
 

 Stated briefly, there is no evidence to support plaintiff’s claim of discrimination on the grounds of retaliation. Thus, this claim is also baseless.
 

 II.
 
 Attorney fees and costs
 

 A.
 
 In the superior
 
 court
 
 *
 

 B.
 
 On appeal
 

 Defendants also request that attorney fees be awarded for their costs in having to defend this appeal. As just concluded, the record establishes plaintiff’s claims were frivolous, thereby entitling defendants to attorney fees under Government Code section 12965. He has presented no issue in this appeal which has any arguable merit. Therefore, we grant defendants’ request for attorney fees, and remand the matter to the trial court to set the amount of the award.
 
 (Planned Parenthood
 
 v.
 
 Aakhus
 
 (1993) 14 Cal.App.4th 162, 176 [17 Cal.Rptr.2d 510].)
 

 Attorneys bear a responsibility to their clients to advise them when a case is frivolous. After plaintiff gave his deposition, it should have been clear to his
 
 [9]
 
 that he had no case of arguable merit. As seen here, plaintiff did not simply lose his case, he is also obligated to pay defendants’ attorney fees because the case was frivolous from the start. Although attorney sanctions were not requested by defendants, we have pondered the question of whether
 
 *1127
 
 sanctions against plaintiff’s counsel would be appropriate, given the extremely poor quality of the opening brief, the frivolousness of the appellate contentions given the record on appeal, and counsel’s flagrant violation of appellate rules that he confine his oral argument to evidence that was admitted in the trial court. However, in the interest of judicial economy and since far too much time and energy has already been expended on this case, we will forego this option rather than solicit additional briefing on this issue.
 

 Disposition
 

 The judgment is affirmed and the matter remanded to the trial court for a determination of defendants’ attorney fees on appeal. Costs are awarded to the prevailing party.
 

 Dibiaso, Acting P. J., and Thaxter, J., concurred.
 

 [1]
 

 The specific factual findings were as follows: “[A] On November 2, 1993, you willfully disobeyed a direct order from your supervisor. You were instructed that a three day travel plan for Owens Valley Camp was approved only if the passes on Highways 108 and 120 were closed. You ignored this directive and elected to travel the longer Highway 88 route even though Highways 108 and 120 were open. “[B] During the week of October 25, 1993, you were specifically directed to contact Cal Trans for pass closure information prior to your trip to Owens Valley Camp. You disobeyed this direct order and did not call Cal Trans before departing for Owens Valley on November 2, 1993. “[C] On November 30, 1993, you signed and submitted a CDC-998A, Employee Attendance Record which reflects fraudulent reporting of 2 hours worked on November 2, 1993, and 2.5 hours on November 3, 1993.”
 

 *
 

 See footnote,
 
 ante,
 
 page 1108.
 

 [2]
 

 Carlos M. Alcala presented oral argument for plaintiff. His name and George P. Harris’s name are on plaintiff’s briefs. When Mr. Alcala was questioned at oral argument about the briefs and where evidence in the record could be found to support plaintiffs contentions on appeal, Mr. Alcala referred to pages 30 through 36 in the appellant’s opening brief. When the court advised him there was a single citation to the record, as referenced above, rather than
 
 *1116
 
 accept responsibility for the poor quality of the brief, Mr. Alcala stated that he did not prepare the brief, and that it was Mr. Harris who had written it. Mr. Alcala also made liberal and inappropriate references to numerous documents and witness declarations, none of which were admitted as evidence. In the briefs no effort was made to show that the trial court’s ruling on the admissibility of the referenced documents was erroneous. At oral argument, Mr. Alcala simply ignored the fact that the documents he was relying on were not admitted, and as will be discussed later, were inadmissible as evidence.
 

 [3]
 

 Plaintiff has also complained he was forbidden from putting his feet on his desk, required to use overhead incandescent lighting when a lamp was sufficient, and was forbidden from having visitors. However, as with his other alleged harassments, he has presented no evidence that any similarly situated female employees were treated differently or that these asserted requirements were imposed because plaintiff is a male.
 

 [4]
 

 As aptly noted in defendants’ brief: “It appears that [plaintiff] is generally dissatisfied with the Superior Court’s evidentiary rulings excluding evidence he sought to present in opposition to [defendant’s] motion for summary judgment. [Citations.] However, [plaintiff’s] brief does not identify any specific evidence ruled inadmissible below, identify any ruling he might wish to contest, analyze any trial court rulings or show how any ruling prejudiced his case. Instead, he presents only a vague and rambling discussion of this case and various general principles of law he apparently views with favor.”
 

 [5]
 

 The female employees each signed a declaration in which they denied plaintiffs allegations in his declaration. They further state attendance sheets are confidential peace officer records, which they did not provide to plaintiff. These documents, if authentic, are peace officer personnel records that cannot be disclosed without a court order. (See Pen. Code, §§ 832.7, 832.8; Evid. Code, §§ 1043, 1045;
 
 City of San Jose
 
 v.
 
 Superior Court
 
 (1993) 5 Cal.4th 47, 52-53 [19 Cal.Rptr.2d 73, 850 P.2d 621];
 
 City and County of San Francisco
 
 v.
 
 Superior Court
 
 (1993) 21 Cal.App.4th 1031, 1034 [27 Cal.Rptr.2d 201].) Since plaintiff did not properly authenticate these documents as business records, the trial court correctly ruled their contents are inadmissible hearsay. (Evid. Code, § 1271.)
 

 *
 

 See footnote,
 
 ante,
 
 page 1108.
 

 [9]
 

 The record reflects that plaintiff’s original attorney of record was Donald M. Martell. The Alcala firm substituted in as counsel after plaintiff’s deposition and before the summary judgment was filed. In fairness to Mr. Martell, the record does not reflect why Mr. Martell was substituted out. It may be that Mr. Martell advised plaintiff of the futility of continuing with his causes of action. Thus, we do not intend to imply that Mr. Martell did not fulfill his obligation to advise plaintiff that his case was so weak he probably would have to pay the defendants’ attorney fees.