Filed 4/16/14  Jenkins v. Skinner CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ELIZABETH JENKINS, | D063866 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00037283-CU-HR-CTL) |
| RICHARD R. SKINNER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.

Richard R. Skinner, in pro. per., for Defendant and Appellant.

William M. Nolan for Plaintiff and Respondent.

Defendant and appellant Richard R. Skinner, a self-represented litigant, challenges the sufficiency of the evidence supporting the trial court's issuance of a civil harassment

restraining order under Code of Civil Procedure[1] section 527.6 in favor of plaintiff and respondent Elizabeth Jenkins and specified family members.  Skinner contends the court did not have clear and convincing evidence to issue the restraining order against him or evidence of good cause to include Jenkins's family members.  We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Jenkins first met Skinner in line at a coffee shop.  He initiated small talk by telling Jenkins, "I like the curls in your hair."  Skinner noticed Jenkins's employee badge indentifying her as a school teacher at a La Jolla academy, and told her his daughter attended the academy and ex-wife worked there.  Skinner said he had not seen his daughter in three years and asked about her.  Feeling increasingly uncomfortable, Jenkins told him she did not know his daughter.  Skinner told Jenkins a story about how his daughter had lied in the past.  When Jenkins repeated that she did not know Skinner's daughter, Skinner started talking about his ex-wife, calling her manipulative and a liar and claiming she had lied in college by accusing a professor of sexual harassment.

Jenkins later provided Skinner's ex-wife with a declaration describing her encounter, which was used in a family court proceeding.  Learning Jenkins had done so, Skinner called Jenkins at her home and "berate[d]" her in an intimidating manner.  Jenkins told him not to call her again, hung up and called police.  Skinner then emailed

---

[1]     All statutory references are to the Code of Civil Procedure.

[2]     Skinner has not provided a reporter's transcript of the hearing on Jenkins's proceedings and has elected to proceed by means of an appendix in lieu of a clerk's transcript.  Jenkins has filed a respondent's appendix, and we gather the factual background from Skinner's rather limited record and the respondent's appendix.

the academy and accused Jenkins and his ex-wife of conspiring against him, claiming Jenkins's declaration "really sounds like something [Jenkins] and [my ex-wife] cooked up. I am very disappointed and I hope you will address it." Following his email, Skinner mailed a letter to Jenkins's home in part stating, "What you wrote in the enclosed declaration sounds like something [my ex-wife] would come up with. . . . Your declaration says a lot about you and as much as you are attractive on the outside, the inside could use some work. [¶] . . . In College [my ex-wife] alleged that a professor sexually harassed her. [My ex-wife] boasts about how she got even with the professor she didn't like. It is evil."

Skinner thereafter spoke to several of Jenkins's neighbors and gave them copies of the letter he sent Jenkins along with copies of her declaration.[3] Jenkins reported the incident to a deputy sheriff, who told her Skinner had an arrest record and recommended she obtain a restraining order against him.

Jenkins filed a petition for a civil harassment restraining order against Skinner. In a sworn declaration accompanying the petition, she stated, "Skinner is obsessing about the declaration I gave in his family law proceeding. . . . [He] apparently thinks I have

[3]     Skinner concedes in his opening brief that he "wanted very much to get to the truth and decided to conduct his own investigation." He further states: "Ms. Jenkins is a neighbor of Mr. Skinner and Mr. Skinner discussed Ms. Jenkins['s] declaration with several of them. Mr. Skinner also gave several of the neighbors a copy of Ms. Jenkin[s]'s declaration hoping that someone might come forward with information that Ms. Jenkins has a history of engaging in unscrupulous behavior." Skinner also states he "had a right to do everything that he did"; that he should be "allowed to call anyone, including Ms. Jenkins, . . . allowed to talk to his and Ms. Jenkins['s] neighbors in an attempt to legitimately investigate if they have information that would assist him" and had an "absolute right" to contact his child's school "to express his concerns."

hurt his cause in the divorce case, and is now harassing me. Skinner lives 100 yards from me, and knows where I live. He is a self-employed contractor, with time and opportunity to do harm to me, my children, and my elderly mother. I fear for the safety of all of us." Jenkins also asked the court to extend the restraining order to include her mother and two sons, explaining, "Skinner lives around the corner from my home . . . . My children are a toddler [] and infant twins []. My mother, [] stays with my children at my home while I am at work, and at other times. My husband is in the Navy and is to be deployed on April 1, 2013."

In March 2013, the court held a hearing on the matter with both parties in attendance. The court heard testimony from Jenkins, Skinner, and Skinner's ex-wife. At the hearing's conclusion, the court imposed a three-year restraining order against Skinner requiring him to stay 50 yards away from Jenkins, her mother, her husband and two sons; prohibiting him from contacting them; and prohibiting him from harassing, intimidating, stalking and taking other similar actions against them.

DISCUSSION

I.

It is axiomatic that "[an] order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority.

4

(*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 (*Guthrey*); Cal. Rules of Court, rule 8.204(a)(1)(C).)

As a general rule, "[a]n appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Rule 8.204(a)(1)(C) of the California Rules of Court places the burden on appellants to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." Thus," '[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' [Citation.] It is the duty of [appellant] to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived.' " (*Guthrey*, *supra*, 63 Cal.App.4th, at p. 1115.)

Skinner's opening brief does not meet these standards. Skinner begins by asserting "the statement of facts will show the Appellate Court that clear and convincing evidence does not exist and that the restraining order was extended to household members unknown to the Appellant." Skinner then purports to describe facts and the proceedings

5

in the trial court, but none of his assertions are supported by reference to the record as required by California Rules of Court, rule 8.204(a)(1)(C). Further, his assertions are not limited to matters in the record as required by California Rules of Court, rule 8.204(a)(2)(C). For example, Skinner states that during the hearing, "[he] explained to the Court that he believed his former wife was behind the falsified declaration" and "believed his former wife is sociopathic . . . ." Skinner claims he told the court "he has always had a great relationship with his daughter and that he feels [his] daughter is being alienated by her Mother." Skinner suggests he had filed evidence for the hearing that was removed from the court file by his ex-wife. It is Skinner's burden to present an adequate record so as to affirmatively demonstrate trial court error. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794; see *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) "We cannot presume error from an incomplete record." (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412.) " '[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Skinner chose to proceed without a reporter's transcript, and thus we are without ability to consider these assertions.

Nor has Skinner set forth legal principles governing Jenkins's request for a restraining order, or the applicable standard of review. He provides no reasoned legal analysis or authority as required by California Rules of Court, rule 8.204(a)(1)(B). We need not examine undeveloped claims; our role is to evaluate legal argument with citation of authorities on the points made. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th

6

975, 984-985; *People v. Stanley* (1995) 10 Cal.4th 764, 793.) Skinner gives us no basis to conduct this analysis. None of his bare assertions affirmatively demonstrates the court erred in granting Jenkins's petition.

In light of Skinner's failure to affirmatively demonstrate the court erred, to support his legal arguments by legal authority, or to support his factual citations to the record, we deem his contentions forfeited. (*Guthrey*, *supra*, 63 Cal.App.4th at p. 1115.) The fact Skinner filed this appeal in propria persona does not exempt him from compliance with well-established appellate rules. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247 [litigants appearing in propria persona must follow the same procedural rules as attorneys].)

## II.

Even if Skinner had not forfeited his claims of error, we would reject them on grounds the record contains substantial evidence to support the issuance of the restraining order and extending it to the members of Jenkins's family.

Section 527.6, subdivision (a), provides in relevant part: "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section." Section 527.6, subdivision (b)(3) defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer

7

substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

" 'Unlawful violence' is any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but shall not include lawful acts of self-defense or defense of others."  (§ 527.6, subd. (b)(7).)

" 'Credible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose."  (§ 527.6, subd. (b)(2).)

A course of conduct is defined as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."  (§ 527.6, subd. (b)(1).)  It includes following or stalking a person, making harassing telephone calls, or sending harassing correspondence by any means including mail, fax, or email. (§ 527.6, subd. (b)(1); see *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412-1414.) The course of conduct must by its nature cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.  (§ 527.6, subd. (b)(3); *Brekke*, at pp. 1414-1415.)

If the court finds by clear and convincing evidence that unlawful harassment exists, it must issue an injunction prohibiting the harassment.  (§ 527.6, subd. (i).)  On a showing of good cause, the trial court may also include family members living with the plaintiff.  (§ 527.6, subd. (c).)

8

"The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record." (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) "We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings. [Citation.] Declarations favoring the prevailing party's contentions are deemed to establish the facts stated in the declarations, as well as all facts which may reasonably be inferred from the declarations; if there is a substantial conflict in the facts included in the competing declarations, the trial court's determination of the controverted facts will not be disturbed on appeal." (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137-1138.)

The record contains substantial evidence that Skinner engaged in willful course of harassment directed at Jenkins that served no legitimate purpose. Skinner's conduct in calling Jenkins at home and intimidating her, emailing the school where she worked, sending her a letter in the mail suggesting she falsified her declaration, and leaving copies of her declaration on her neighbors' doorsteps, would cause a reasonable person to suffer substantial emotional distress and, as Jenkins stated under oath, in fact caused Jenkins great emotional distress.

The record also shows good cause for extending the restraining order to include Jenkins's family members: a toddler, two infants, her elderly mother and her husband. Jenkins expressly stated she feared for her family's safety, and we conclude her fear was reasonable because her husband would not be present after April 1, 2013, and Skinner lived only 100 yards from Jenkins's home, where her mother watched her three young

9

children.  Jenkins averred he had repeatedly contacted her there and she worried he would do the same with them when she was absent.

In light of the evidence in the record, including Skinner's own admissions, we conclude substantial evidence supports the trial court's findings and its decision to issue the section 526.7 civil harassment restraining order against Skinner.  The record also demonstrates good cause for extending the restraining order to include Jenkins's family members.

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.