[No. B183545. Second Dist., Div. One. May 12, 2009.]

ROBERT DAHMS, Plaintiff and Appellant, v.
DOWNTOWN POMONA PROPERTY AND BUSINESS IMPROVEMENT
DISTRICT et al., Defendants and Respondents.

COUNSEL

Martineau & Knudson, Ronald C. Friendt, Gerald R. Knudson, Jr.; Law Offices of Tony J. Tanke and Tony J. Tanke for Plaintiff and Appellant.

Alvarez-Glasman & Colvin and Scott E. Nichols for Defendants and Respondents.

OPINION

**ROTHSCHILD, J.**—Robert Dahms appeals from the trial court's rejection of his challenge to the creation of a special assessment district in downtown Pomona, California. In our previous opinion in this case, we applied the substantial evidence standard of review to Dahms's challenges and affirmed, but we recognized that the issue of the proper standard of review was then before the Supreme Court. The Supreme Court granted review in this case but deferred briefing pending its decision in the case already under review. Last year the Supreme Court decided that case, *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431 [79 Cal.Rptr.3d 312, 187 P.3d 37] (*SVTA*), and held that the proper standard of review is de novo. (*Id.* at p. 450 ["[C]ourts should exercise their independent judgment in reviewing whether assessments that local agencies impose violate article XIII D" of the California Constitution].) The court remanded this case to us with directions to vacate our decision "and to reconsider the cause in light of [*SVTA*]." We do so and again affirm.[1]

---

[1] On remand from the Supreme Court, both parties submitted supplemental briefs pursuant to California Rules of Court, rule 8.200(b). Such briefs "must be limited to matters arising after the previous Court of Appeal decision in the cause, unless the presiding justice permits briefing on other matters." (Cal. Rules of Court, rule 8.200(b)(2).) Our presiding justice has not permitted briefing on other matters, and none was requested. Consequently, any arguments raised in the supplemental briefs that could have been raised in the parties' original briefs will not be considered.

In his petition for rehearing, Dahms objects that only "clairvoyance" would have allowed him to anticipate the substance of *SVTA* so as to raise all of the necessary arguments in his original briefs. The argument fails. Any arguments that could have been raised in the original briefs (and thus do not require clairvoyance) but were not raised until the supplemental briefs will not be considered. Any arguments that could not have been raised until the supplemental briefs (such as arguments that depend essentially on new rules of law stated in *SVTA*) will be considered. Dahms's supplemental brief contains virtually no appropriate new arguments. It is, in the main, merely an attempt to reargue the entire appeal from the ground up. For example, in his supplemental brief Dahms argues that the Downtown Pomona Property and Business Improvement District (PBID) is unlawful because the engineer's report was certified after

## BACKGROUND

This case concerns the formation of the PBID, a special assessment district created by the City in 2004. The PBID levies assessments on properties within downtown Pomona in order to fund certain services for the properties within the PBID's boundaries. Dahms owns a number of properties within the PBID.

The process of creating the PBID apparently began with a request the City received from four property owners in the spring of 2003. The City thereafter hired an engineering consultant, MuniFinancial, to assist in the creation of the PBID. On June 14, 2004, after receiving a management plan for the PBID

ballots were mailed to property owners. That argument could have been raised in Dahms's original briefs but was not, and *SVTA* sheds no light on its merits. Consequently, it and similar arguments in the supplemental briefs will not be considered.

Also on remand from the Supreme Court, Dahms moved to "correct" the record on appeal by "refiling" the "supplemental administrative record." We denied the motion. Because Dahms objects to that denial in his petition for rehearing, we now set forth the procedural background in some detail.

Five calendar days before trial of this matter in the superior court, Dahms filed a "motion to supplement administrative record," listing a number of documents and asserting, without elaboration or evidence, that they "are part of the [a]dministrative [r]ecord in this case." The City of Pomona (City) opposed the motion, contending inter alia that "none of the items" Dahms sought to introduce was "ever part of the record" before the City. The record on appeal contains no ruling on Dahms's motion. The last page of the reporter's transcript contains the following statement by the trial court: "Whoever submitted these documents, please take them with you. The minute order will provide that we are returning these documents to you, and they are to be held by you and forwarded to any higher court to which this matter is brought." It is not clear from the court's statement what "documents" the court was referring to, and no minute order from the hearing, nor any other minute order referring to those "documents," was included in the record on appeal. Our records reflect that when this case was originally before us, Dahms filed the administrative record with this court but did not file his "supplemental administrative record." Dahms's original briefs in this court did not argue that the trial court erred by failing to grant his "motion to supplement administrative record." On remand from the Supreme Court, however, Dahms attempted to "refile" the "supplemental administrative record" in this court on the ground that the trial court had "ordered that it be included in the record on appeal," citing the statement of the trial court quoted *ante*. The trial court's statement does not indicate that the court "ordered that [the 'supplemental administrative record'] be included in the record on appeal." The parties, not the trial court, designate the materials to be included in the record on appeal, pursuant to California Rules of Court, rules 8.120 through 8.137. The trial court's statement indicates only that the minute order (which we have never seen) would reflect that the "documents" were returned to whichever party submitted them, and the court further advised the parties that they should retain all such documents for inclusion, as necessary or desired, in the record on appeal. Because (1) the trial court never granted Dahms's "motion to supplement administrative record," (2) nothing in the record before us indicates that the trial court ordered that the "supplemental administrative record" be included in the record on appeal, (3) Dahms did not argue either of those issues when this case was originally before us, and (4) Dahms did not file his "supplemental administrative record" in this court when this case was originally before us, we denied his motion, on remand from the Supreme Court, to "refile" the "supplemental administrative record."

and a petition signed by property owners representing over 50 percent of the assessments to be levied, the city council passed and approved a resolution declaring its intention to form the PBID. The resolution set August 2, 2004, as the date for a public hearing on the formation of the PBID.

On June 18, 2004, the City mailed ballots to the affected property owners. On August 2, 2004, the city council held the public hearing, at the conclusion of which the ballots were tabulated. One hundred and twenty-six ballots favored the PBID; 66 opposed it. The ballots were also tabulated after being weighted by the dollar amount to be assessed for each affected property, as required by California law; the weighted vote was $338,461.29 in favor, and $153,156.86 against.

At the conclusion of the hearing and the tabulation of the ballots, the city council passed and approved three resolutions relating to the PBID. The first resolution declared the results of the balloting. The second approved the formation of the PBID, specified its boundaries and the services to be provided, stated the total amount of the assessments and the maximum annual rate of increase in the assessments, and took various other, related measures. The third resolution approved the report on the PBID prepared by the engineer, MuniFinancial, as required by California law.

MuniFinancial's report describes the services that the PBID would provide: (1) security, (2) streetscape maintenance (e.g., street sweeping, gutter cleaning, graffiti removal), and (3) marketing, promotion, and special events. All the services exceed those the City already provides within the boundaries of the PBID and are to be provided only to the properties within the PBID.

MuniFinancial's report based the amount of the assessment for each assessed property within the PBID on three factors: street frontage (i.e., the length of street on the street address side of the property), building size, and lot size. Those factors account for 40 percent, 40 percent, and 20 percent, respectively, of the amount assessed for each property. Using those factors, the City calculated the assessment for each assessed property as a portion of the total cost of the services that the PBID provides. MuniFinancial's report also stated that the City would assess various nonprofit entities ("religious organizations, clubs, lodges and fraternal organizations") within the boundaries of the PBID only 5 percent of the amount that they would otherwise have to pay (i.e., the "basic assessment rate"). In addition, the City exempted from assessment the properties within the PBID "zoned exclusively residential."[2]

---

[2] Dahms does not contend that the lower assessments on the nonprofit parcels caused the assessments on other parcels to be higher than they otherwise would have been (e.g., rather than raise the other assessments, the City might have made up the difference by using other

On August 25, 2004, Dahms filed this action challenging the City's formation of the PBID on the ground that it violates article XIII D of the California Constitution (article XIII D). His complaint alleged 14 causes of action and named the City, the PBID, and "all persons interested in the matter of the [PBID]" as defendants. (Capitalization omitted.) The trial court sustained the City's demurrer to two causes of action, and the case proceeded to a bench trial on Dahms's remaining claims. After the parties filed trial briefs and participated in a hearing, the trial court entered judgment against Dahms. This appeal followed.

## STANDARD OF REVIEW

"[We] exercise [our] independent judgment in reviewing whether assessments that local agencies impose violate article XIII D." (*SVTA, supra*, 44 Cal.4th at p. 450.)

## DISCUSSION

### I. The Hearing on the Assessment Was Not Premature

Dahms argues that the city council held the hearing on the proposed assessment too early, in violation of article XIII D, because the hearing took place on the 45th day after the City mailed notices of the proposed assessment to the affected property owners. We disagree.

Article XIII D requires the City to "conduct a public hearing upon the proposed assessment not less than 45 days after mailing the notice of the proposed assessment to record owners of each identified parcel." (Art. XIII D, § 4, subd. (e).) By its terms, that constitutional provision permits the City to hold the hearing 45 days after mailing the notices. The only remaining question is how the 45-day period is to be computed.

The Code of Civil Procedure provides that "[t]he time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." (Code Civ. Proc., § 12.) By this method of computation, the City held the hearing 45 days after mailing the notices—the day of the mailing is

funding sources). In his supplemental brief on remand from the Supreme Court, Dahms does contend that the exemptions for residential parcels caused the assessments on other parcels to be higher than they otherwise would have been. Because the contention concerning residential parcels could have been raised in Dahms's original briefs but was not, we will not consider it. (See fn. 1, *ante*.) In addition, even in his supplemental brief Dahms cites nothing in the record to support the contention, so the point is waived for that reason as well. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116 [75 Cal.Rptr.2d 27].)

excluded from computation of the 45-day period, but the day of the hearing is included.[3] Accordingly, the notice did not violate the constitutional notice provision.

Dahms's arguments to the contrary are not persuasive. He cites a section of the Government Code for the proposition that " '[a] day is the period of time between any midnight and the midnight following,' " but that section tells us nothing about whether the first day, the last day, neither, or both are to be included in computing the 45-day period. Dahms also relies upon two cases, *Burke v. Turney* (1880) 54 Cal. 486, and *City of Pleasanton v. Bryant* (1965) 63 Cal.2d 643 [47 Cal.Rptr. 807, 408 P.2d 135], but neither of those cases involved a provision, like the one at issue here, calling for notice of "not less than" a specified number of days. Consequently, neither case alters our conclusion.

For all of these reasons, we reject Dahms's argument that the hearing on the assessment was unconstitutionally premature.

## II. The Amount Assessed on Each Parcel Does Not Exceed the Reasonable Cost of the Proportional Special Benefit Conferred

The California Constitution provides that "[n]o assessment shall be imposed on any parcel which exceeds the reasonable cost of the proportional special benefit conferred on that parcel." (Art. XIII D, § 4, subd. (a).) "The proportionate special benefit derived by each identified parcel shall be determined in relationship to the entirety of the capital cost of a public improvement, the maintenance and operation expenses of a public improvement, or the cost of the property related service being provided." (*Ibid.*) " 'Special benefit' means a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. General enhancement of property value does not constitute 'special benefit.' " (Art. XIII D, § 2, subd. (i).)

Dahms presents three separate arguments for the conclusion that the assessments imposed under the PBID violate the foregoing constitutional requirements. We conclude that none of Dahms's arguments has merit.[4]

---

[3] Similarly, a noticed motion in the superior court must be served "at least 16 court days before the hearing." (Code Civ. Proc., § 1005, subd. (b).) That is, if the motion is served on the 16th court day counting back from the hearing date, and excluding the day of the hearing itself, then the statutory notice requirement is satisfied.

[4] Dahms recognizes that "[t]he record in assessment proceedings consists of the agency's resolutions, hearings, and processes, and the engineer's report required by [article XIII D]." In his supplemental brief on remand from the Supreme Court, however, Dahms appears to argue

## A. Nonprofit Entities

Dahms argues that the assessments for properties owned by nonprofit entities, such as fraternal organizations and churches, violate article XIII D on the ground that "[t]he assessments are not proportional to the benefits received because the assessments are discounted" and "there is no evidence in the record to support the discounts." We reject this argument because it misconstrues the requirements imposed by article XIII D.

Under subdivision (a) of section 4 of article XIII D, the assessment imposed on a parcel shall not "exceed[] the reasonable cost of the proportional special benefit conferred on that parcel." But article XIII D does not require that the assessment *be no less than* the reasonable cost of the proportional special benefit conferred on that parcel. That is, article XIII D leaves local governments free to impose assessments that are less than the proportional special benefit conferred—in effect, to allow discounts. Moreover, nothing in article XIII D precludes local governments from allowing discounts across the board for all parcels in the assessment district or from allowing them selectively, for certain parcels in the district but not for others.[5]

In sum, nothing in article XIII D prohibits discounted assessments, and nothing in article XIII D requires that any discounts be uniformly granted across all parcels in an assessment district. Rather, what article XIII D requires is that the assessment on a particular parcel not exceed the reasonable cost of the proportional special benefit conferred on that parcel. (Art. XIII D, § 4, subd. (a).) Thus, if the assessments imposed on some parcels are less than the reasonable cost of the proportional special benefit conferred on those parcels, then the discounted assessments do not violate article XIII D so long as those discounts do not cause the assessments imposed on the remaining parcels to exceed the reasonable cost of the proportional special benefit conferred on those parcels. Dahms does not argue

that the engineer's report must be sufficient *on its own* to show that an assessment meets *all* of the requirements of article XIII D. Insofar as Dahms's new argument is based on *SVTA*, it fails because *SVTA* never addressed the issue. Insofar as the argument is based on the text of article XIII D, it fails because (1) it could have been raised in Dahms's original briefs but was not (see fn. 1, *ante*), and (2) the text of article XIII D does not support it. Section 4, subdivision (b), of article XIII D provides that "[a]ll assessments shall be supported by a detailed engineer's report," but it does not provide that all assessments shall be supported *exclusively* by such a report, or by such a report *and nothing else*.

[5] On appeal, Dahms argues only that the assessments violate article XIII D. We therefore express no opinion on whether the City's selective allowance of discounts might violate any other applicable legal constraints.

that the discounts given to the nonprofits caused the assessments on other parcels to exceed the limits imposed by article XIII D.[6]

■ The only provision of article XIII D that might appear to be in conflict with our conclusions is contained in section 4, subdivision (f), which deals with judicial review of assessments. It provides that in a "legal action contesting the validity of any assessment," the agency imposing the assessment has the burden of demonstrating "that the amount of any contested assessment is proportional to, and no greater than, the benefits conferred on the property or properties in question." (Art. XIII D, § 4, subd. (f).) On the surface, the language of that provision might seem to suggest that the agency must prove that the assessment meets two separate requirements, namely, that the assessment is both "proportional to" and "no greater than" the benefits conferred. If that interpretation were correct, then Dahms's criticism of the assessments for the nonprofits might be sound, assuming that being "proportional" means being no greater *and no less* than the benefits conferred.

We conclude, however, that that interpretation cannot be correct. First, subdivision (f) of section 4 of article XIII D is a procedural provision concerning the burden of proof in legal actions challenging assessments. (See generally *SVTA, supra,* 44 Cal.4th at pp. 443–446.) Its purpose was to supersede prior Supreme Court authority that placed the burden of proof on the plaintiff challenging the assessment—subdivision (f) "reverse[s] the presumption of validity by placing the 'burden' on the agency" to prove that the assessment is valid. (44 Cal.4th at p. 445.) But the substantive provisions setting the standards for which assessments are valid and which ones are not are contained in other subdivisions of section 4 of article XIII D, such as subdivision (a). It would consequently be surprising if a procedural provision like subdivision (f), concerning the burden of proof in judicial review of assessments, were to impose a new substantive requirement on all assessments, namely, that they be "proportional to" (and hence no less than) the special benefits conferred. No such substantive requirement appears anywhere else in article XIII D.[7]

■ Second, ordinary rules of constitutional interpretation show that subdivision (f) does no such thing. If being "proportional to" the special benefits meant that an assessment could not be less than the special benefits, then it would likewise mean that the assessment could not be greater than the special benefits—in either case, the assessment would fail to be proportional.

---

[6] See footnote 2, *ante.*

[7] Subdivision (a) of section 4 of article XIII D does provide that publicly owned parcels "shall not be exempt from assessment" unless they receive no special benefit. But it does not provide that publicly owned parcels, or any other parcels, cannot be subject to discounted assessments, as long as the discount is less than 100 percent.

But if that were the case, then subdivision (f)'s requirement that the assessment be "no greater than" the benefits would be surplusage, because any assessment that was proportional would be neither less than nor greater than the benefits. "[A] statute or constitutional provision should be interpreted so as to eliminate surplusage . . . ." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 772 [35 Cal.Rptr.2d 814, 884 P.2d 645].) We therefore should avoid interpreting subdivision (f) as imposing two separate requirements—that an assessment be both "proportional to" and "no greater than" the benefits—because to do otherwise would render the second requirement superfluous.

Third, the relevant provision of subdivision (f) is, on its face, not a model of precise draftsmanship, and some interpretative work in resolving its meaning is plainly necessary. The provision requires the defendant in an action challenging an assessment to prove "that the amount of any contested assessment is proportional to, and no greater than, the benefits conferred on the property or properties in question." (Art. XIII D, § 4, subd. (f).) The provision says "benefits," however, not "special benefits." (Cf. *SVTA, supra,* 44 Cal.4th at p. 451, fn. 7.) Thus, if read literally, subdivision (f) requires only that the defendant prove the assessment is "proportional to" and "no greater than" the *total benefits* (special and general) conferred. But nothing elsewhere in article XIII D indicates any intent to make assessments proportional to, or to test their validity by in any way measuring them against, the combination of special and general benefits conferred on the assessed properties. Rather, the point of the substantive provisions of article XIII D is to limit assessments to special benefits. (See art. XIII D, § 4, subd. (a).) A literalistic reading of subdivision (f) would consequently thwart the manifest purpose of article XIII D as a whole.

■ For all of these reasons, we conclude that where subdivision (f) of section 4 of article XIII D says that the "agency" imposing an assessment bears the burden of proving that "the amount of any contested assessment is proportional to, and no greater than, the benefits conferred on the property or properties in question," what it means is that the agency must prove that the assessment imposed on a parcel does not "exceed[] the reasonable cost of the proportional special benefit conferred on that parcel." (Art. XIII D, § 4, subd. (a).) In short, it means that the defendant bears the burden of proving that the assessment meets the substantive requirements imposed by subdivision (a).[8]

---

[8] We *disagree with the concurrence's suggestion that our interpretation "dismiss[es] the* proportionality language" or effectively "strike[s] the language requiring proportionality" and thus "eliminates a portion of" article XIII D. (Conc. opn., *post,* at p. 726.) On our interpretation, subdivision (f) of section 4 of article XIII D requires the agency to prove that the assessment imposed on a parcel does not exceed the reasonable cost of the *proportional*

■ Thus, under our interpretation, subdivision (f) of section 4 of article XIII D does not prohibit discounted assessments (as long as the discounts do not cause *other* assessments to violate art. XIII D). It thus is fully consistent with our reasons for rejecting Dahms's argument concerning the assessments imposed on parcels owned by nonprofits.

## B. Commercial Properties

Dahms argues that certain parcels with commercial uses were not assessed at all and that the assessments for certain other parcels with commercial uses were discounted. The argument fails for the same reason as the argument concerning parcels owned by nonprofits, namely, article XIII D does not prohibit discounts.

■ In addition to that dispositive legal flaw, Dahms's argument fails because he has not identified the parcels at issue and supported his claims of commercial use and discounted or nonexistent assessments by reference to the record. For example, Dahms asserts, without further elaboration, that "[t]here are between 6 and 10 commercial properties that are not included in the PBID." The only support he cites is a map of the entire PBID, leaving us to guess which properties he is talking about, why he thinks they are commercial, and why he thinks they "are not included in the PBID." Although article XIII D places the burden of proof on the City to demonstrate that the assessments meet the applicable substantive requirements, article XIII D neither converts an appeal into a trial de novo nor relieves Dahms of his burden, as appellant, to articulate and support his own arguments on appeal in a manner that will make them susceptible of rational evaluation by this court. (*Guthrey v. State of California, supra*, 63 Cal.App.4th at pp. 1115–1116; see also Cal. Rules of Court, rule 8.204(a)(1)(B), (C).) Similarly, Dahms asserts that parcels 8341-007-900 and 8341-007-030 "are both commercial parking lots," but he cites no evidence to support his assertion. His argument based on that assertion is therefore deemed waived. (*Guthrey v. State of California, supra*, 63 Cal.App.4th at pp. 1115–1116.)

Dahms also refers to a "substantial commercial development," which, he says, is owned by the "City of Pomona Redevelopment Agency" but "was not included" in the PBID. As support, Dahms cites a portion of the record that does not refer to the City of Pomona Redevelopment Agency but which refers only to a property "at the corner of Mission and Garey." The record reflects that the two parcels within the PBID at the corner of Mission and Garey, numbers 8335-012-017 and 8341-008-027, were assessed in the amounts of

---

special benefit conferred on that parcel. Our interpretation therefore does not eliminate the concept of proportionality from the meaning of subdivision (f).

$7,954 and $6,793, respectively. We consequently find no support for Dahms's claim that the property in question "was not included."[9]

For all of these reasons, Dahms's arguments concerning the assessments on certain allegedly commercial properties fail.

### C. Street Frontage

Dahms argues that the assessments are not proportional to the special benefits because the assessments are based on only 37 percent, rather than 100 percent, of the street frontage in the PBID. Dahms apparently generates the 37 percent figure by dividing the total amount of street frontage used in calculating the assessments (18,504 feet) by the total amount of street frontage of all of the properties in the PBID (49,960 feet). The only support in the record for those numbers consists of Dahms's own unsworn statements. Even if we accept those statements as sufficient evidence, however, the argument still lacks merit.

First, insofar as Dahms is arguing merely that the assessments are not proportional to the special benefits, rather than that the assessments on certain parcels *exceed* the reasonable cost of the proportional special benefit conferred on those parcels, the argument fails as a matter of law for the reasons given in part II.A, *ante*. Second, even if we take Dahms to be contending that the assessments (at least in some cases) exceed the proportional special benefit, we are not persuaded, for the following reasons.

The City based the assessment for each assessed property on three factors: street frontage, building size, and lot size. Those factors accounted for 40 percent, 40 percent, and 20 percent, respectively, of the assessment for each property. As used in the assessment formula, however, "street frontage" does not mean the entire length of street bordering all sides of an assessed property. Rather, it means the length of street *where the street address for the property is* (or, if there is no street address, an approximation of where the street address would be if the property were developed). To avoid ambiguity, we will refer to this as "front footage," and we will use "total street length" to refer to the total length of street on which a property borders. Dahms's argument, then, is that the assessments on certain parcels exceed the reasonable cost of the proportional special benefit conferred on those parcels because each assessment is based, in part, on front footage rather than on total street length.

We disagree. Because not all parcels in the PBID are identical in size and other characteristics, some will receive more special benefit than others. The

---

[9] We also note that MuniFinancial's report shows that the City assessed more than a dozen parcels owned by the "Redevelopment Agency of Pomona City."

City accordingly had to devise a formula for determining the proportional special benefit received by each parcel—the City could not simply divide the total reasonable cost of the total special benefit provided to the PBID by the number of parcels in the PBID. It makes sense to use front footage rather than total street length to determine the proportional special benefit that a parcel will derive from the services of the PBID (e.g., increased security, litter removal, and graffiti removal). For example, a clean and safe front entrance to a commercial parcel is more likely to constitute a special benefit to that parcel than a clean and safe side or rear, where there may or may not be any entrance at all. At the same time, the City's formula also takes into account other measures (namely, building size and lot size) of each parcel's size and consequent proportional special benefit, and those other measures should compensate for any disproportionality that might have resulted from exclusive reliance on front footage. That is, if because of quirks of its shape and location, a small parcel has a large amount of front footage (or a large parcel has a small amount of front footage), the other factors in the assessment formula will compensate and render the total assessment proportional.

Exercising our independent judgment, we conclude that the City's use of front footage rather than total street length did not cause the assessment on any parcel to exceed the reasonable cost of the proportional special benefit conferred on that parcel.[10] Dahms's attack on the use of front footage as a factor in calculating the assessments therefore fails.[11]

### III. The City Adequately Distinguished Between Special and General Benefits

Dahms quotes article XIII D to the effect that " '[o]nly special benefits are assessable, and an agency shall separate the general benefits from the special benefits conferred on a parcel.' " (Art. XIII D, § 4, subd. (a).) On that basis, he argues that the City's creation of the PBID violates article XIII D because the City failed to "separate general benefits from special benefits." The argument fails because it is based on a misunderstanding of the relevant constitutional requirements.

---

[10] We do not, however, hold that the City's formula for calculating assessments is the only permissible formula.

[11] Dahms also appears to argue that in certain cases the City incorrectly applied the methodology of using front footage. He asserts, for example, that the City assessed a particular parcel on the basis of front footage on only one side although "[b]usinesses on the parcel face . . . three streets." Once again, however, Dahms fails to cite any evidence to support his assertion that "businesses on the parcel face . . . three streets," so this argument is deemed waived, as are similar arguments with respect to other parcels. (*Guthrey v. State of California, supra*, 63 Cal.App.4th at pp. 1115–1116.)

Article XIII D provides that "[a]n agency which proposes to levy an assessment shall identify all parcels which will have a special benefit conferred upon them and upon which an assessment will be imposed. The proportionate special benefit derived by each identified parcel shall be determined in relationship to the entirety of the capital cost of a public improvement, the maintenance and operation expenses of a public improvement, or the cost of the property related service being provided. No assessment shall be imposed on any parcel which exceeds the reasonable cost of the proportional special benefit conferred on that parcel. Only special benefits are assessable, and an agency shall separate the general benefits from the special benefits conferred on a parcel." (Art. XIII D, § 4, subd. (a).) As previously noted, " '[s]pecial benefit' means a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. General enhancement of property value does not constitute 'special benefit.' " (Art. XIII D, § 2, subd. (i).)

Those provisions require that assessments must be limited to the reasonable cost of providing special benefits; any additional costs of providing additional general benefits cannot be included in the amounts assessed. The record amply demonstrates that the City complied with that requirement. The engineer's report describes the services to be provided by the PBID: (1) security, (2) streetscape maintenance (e.g., street sweeping, gutter cleaning, graffiti removal), and (3) marketing, promotion, and special events. They are all services over and above those already provided by the City within the boundaries of the PBID. And they are particular and distinct benefits to be provided only to the properties within the PBID, not to the public at large—they "affect the assessed property in a way that is particular and distinct from [their] effect on other parcels and that real property in general and the public at large do not share." (*SVTA, supra*, 44 Cal.4th at p. 452.) The services provided by the PBID are therefore special benefits, and the engineer's report separates them from general benefits (i.e., it separates them from benefits already provided by the City within the PBID, or provided to the public at large).

The engineer's report presents a budget for the total cost of the services provided by the PBID. Dahms does not argue that the budgeted cost is unreasonable. The report calculates the assessment for each assessed property within the PBID as a portion of the total cost of the services provided, on the basis of the three factors already described.[12] The record thus demonstrates

---

[12] The report further states that the City will assess the properties owned by nonprofits only 5 percent of the amount that they would otherwise have to pay ("the basic assessment rate"). Again, we note that Dahms does not argue that the discounts given to parcels owned by nonprofits caused the assessments on other parcels to be higher than they otherwise would have been. That is, the City might have made up the shortfall resulting from the discounts by

that only special benefits (i.e., the costs of the services provided by the PBID) were assessed. The City therefore met the constitutional requirement that general benefits not be included in the amounts assessed, so Dahms's argument fails.

Dahms appears to argue that if the PBID confers special benefits on the parcels within the PBID, and those special benefits themselves produce general benefits (either for the PBID or for the broader community), then the value of those general benefits must be deducted from the cost of providing the special benefits and must not be included in any assessment. For example, according to Dahms's argument, if the reasonable cost of providing enhanced security services for the parcels in the PBID were $100,000, and those enhanced security services produced general benefits (e.g., increased property values or increased safety for the general public) valued at $70,000, then the $70,000 value of the general benefits would have to be deducted from the $100,000 cost of providing the special benefits (i.e., the enhanced security services for the parcels in the PBID), and only the remaining $30,000 could be assessed.

The argument fails because the text of article XIII D does not support it. Under article XIII D, "[n]o assessment shall be imposed on any parcel which exceeds the reasonable cost of the proportional special benefit conferred on that parcel." (Art. XIII D, § 4, subd. (a).) The provision is unambiguous, and nothing in article XIII D says or implies that if the special benefits that are conferred also produce general benefits, then the value of those general benefits must be deducted from the reasonable cost of providing the special benefits before the assessments are calculated. Rather, the only cap the provision places on the assessment is that it may not exceed the reasonable cost of the proportional special benefit conferred on that parcel.

As we have already explained, the services provided by the PBID (security services, streetscape maintenance, and marketing, promotion, and special events) are all special benefits conferred on the parcels within the PBID— they "affect the assessed property in a way that is particular and distinct from [their] effect on other parcels and that real property in general and the public at large do not share." (*SVTA, supra*, 44 Cal.4th at p. 452.) Under article XIII D, therefore, the cap on the assessment for each parcel is the reasonable cost of the proportional special benefit conferred on that parcel. If the special benefits themselves produce certain general benefits, the value of those general benefits need not be deducted before the (caps on the) assessments are calculated.

drawing on other sources of funds, rather than increasing the other assessments in the PBID to make up the difference. (See fn. 2, *ante*.)

Thus, to return to our previous hypothetical—in which the reasonable cost of security services is $100,000 and those services produce general benefits worth $70,000—article XIII D does not require that the $70,000 be deducted, leaving only $30,000 that could be assessed. Rather, article XIII D prohibits *adding* the $70,000 value of the general benefits to the $100,000 cost of providing the security services and then imposing assessments totaling $170,000. That is, article XIII D requires that general benefits be separated from special benefits and that general benefits not be assessed. That is what the PBID does. It assesses only the reasonable cost of the services that are provided directly to the parcels in the district.

For similar reasons, if the PBID provided security services to only one city block in downtown Pomona but imposed identical assessments on every parcel within a 20-block radius to pay for those services, on the ground that all those parcels would benefit from the safer environment, then Dahms would have a strong argument that the distant parcels were being assessed for general benefits. He would also have a strong argument that the assessments would violate article XIII D's proportionality requirement, because the distant parcels would not benefit as much as the parcels bordering the block that received the security services, but they would be paying identical assessments.

As actually constituted, however, the PBID suffers from neither of those defects. The district provides security (and other) services *directly* to *all* of the assessed parcels, and it does not impose identical assessments throughout the district but rather uses three parcel-specific factors to calculate an individualized assessment for each assessed parcel.

A comparison of the instant case with *SVTA* further confirms our analysis. In *SVTA*, the assessment district under review spanned over 800 square miles and included approximately 314,000 parcels. (*SVTA, supra,* 44 Cal.4th at p. 439.) The assessments generated funding for an "Open Space Authority" to acquire and maintain open space lands within the district "for recreation, conservation, watersheds, easements, and similar purposes." (*Ibid.*) The engineer's report, however, identified "no particular parcels or specific area" to be acquired, nor did the report even specify the number of parcels to be acquired or the timeframe for acquiring them, stating only that the district " 'should' complete at least one acquisition of open land every five years." (*Id.* at p. 457.) The engineer's report listed seven putative special benefits that would allegedly accrue to the assessed parcels: "(1) enhanced recreational activities and expanded access to recreational areas; (2) protection of views, scenery, and other resources; (3) increased economic activity; (4) expanded employment opportunity; (5) reduced costs of law enforcement, health care, fire prevention, and natural disaster response; (6) enhanced quality of life and

desirability of the area; and (7) improved water quality, pollution reduction, and flood prevention." (*Id.* at p. 453.)

The Supreme Court concluded that "[a]ll the listed benefits are general benefits . . . ." (*SVTA, supra,* 44 Cal.4th at p. 454.) The court further concluded that the assessments violated article XIII D's proportionality requirements because they were not calculated on the basis of any estimation of the cost of the services to be provided by the district—the engineer's report "fail[ed] to identify with sufficient specificity the 'permanent public improvement' that the assessment will finance, fail[ed] to estimate or calculate the cost of any such improvement, and fail[ed] to directly connect any proportionate costs of and benefits received from the 'permanent public improvement' to the specific assessed properties." (44 Cal.4th at p. 457.) For those reasons and others, the court concluded that the assessments not only violated article XIII D but probably violated even the more lax legal standards that were in force before article XIII D was enacted. (44 Cal.4th at pp. 455, 457.)

The PBID is nothing like the district at issue in *SVTA*. In *SVTA*, all seven of the putative special benefits were merely the alleged *effects* of the two services directly funded by the assessments, namely, the acquisition and maintenance of open space land. In contrast, the special benefits conferred by the PBID are not mere *effects* of the services funded by the assessments. Rather, the PBID's services themselves *constitute* special benefits to all of the assessed parcels. The assessments directly fund security services, streetscape maintenance services, and marketing and promotion services for the assessed parcels. *SVTA* in no way suggests that those services are not special benefits.

For all of the foregoing reasons, we reject Dahms's argument that the City did not adequately "separate general benefits from special benefits."

## IV. Dahms's Challenge to the City's Findings Lacks Merit

Dahms claims that certain findings by the City are not supported by substantial evidence. As support for his claim, Dahms simply reiterates, in extremely abbreviated fashion, some of his previous arguments. In response, respondents argue that evidence in the record supports the findings and that the City was not required to make the findings that Dahms has identified, so any alleged lack of evidentiary support for the findings could not serve as a basis for reversal. In his reply brief, Dahms concedes that the findings in question were not legally required, and he does not explain how he was prejudiced by the City's making legally superfluous but putatively unsupported findings. We see no prejudice either, and in any event we agree with respondents that Dahms's arguments fail for independent reasons, as we have explained in the preceding parts of this opinion.

## DISPOSITION

Our previous opinion in this case is vacated. The judgment is affirmed. Respondents shall recover their costs on appeal.

Mallano, P. J., concurred.

**BAUER, J.,**[*] Concurring.—I write separately to express a divergent view about some of the textual analysis in the majority opinion, but I ultimately agree with the result reached in this case, for the reasons expressed below.

The majority has rejected the possibility that the constitutional system governing business improvement districts requires that the assessments levied against the many parcels within such a district reflect a consistent districtwide proportionality between levies and benefits. The task here requires a parsing of article XIII D, section 4, subdivision (f) of the California Constitution, which states that in any action contesting the validity of an assessment by a public improvement district (as in the present case), the district must demonstrate "that the amount of any contested assessment is proportional to, and no greater than, the benefits conferred on the property or properties in question." The majority has found this provision to be "not a model of precise draftsmanship" and has therefore undertaken some extensive "interpretative work" (maj. opn., *ante,* at p. 718) involving a review of several other sections of this article. My study has been simpler; I hope not simplistic. But I feel compelled to respect the constitutional mandate that a challenged agency demonstrate "that the amount of any contested assessment *is proportional to,* and no greater than, the benefits conferred on the property or properties in question." (Italics added.) I cannot dismiss the proportionality language as a mere procedural guideline, as the majority does. While the result of the majority's analysis is essentially to strike the language requiring proportionality, I believe that both of these requirements ("proportional to" and "no greater than") can be given life. There are at least three reasons why I prefer the reading that requires proportionality. First, an analysis that eliminates a portion of a constitutional provision should be avoided wherever possible. Second, it seems unlikely that this law would mandate proof of something— e.g., proportionality—that is not required. Third, I perceive that the concept of proportionality is at the heart of this entire plan, with property owners expected to pay pro rata for the special benefits they receive.

I readily accept the majority's reasonable definition of "proportional" as meaning no greater and no less than the benefits conferred. This leads us both

---

[*]Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

to the concern that a discounted assessment on one parcel (i.e., less than its proportional rate) could lead to assessments on other parcels that exceed the reasonable cost of the special benefits conferred on those parcels. This would necessarily be true if the district is a "closed" system, with no infusion of funds from any outside source, such as the city's general revenues. Indeed, there are at least two places in the record that indicate that the Downtown Pomona Property and Business Improvement District (PBID) is a system with no outside funding. The resolution adopting this plan states "The assessments shall pay for the improvements and activities specified in Section 2. No bonds shall be issued." The same resolution further states "The activities and improvements to be provided within the District will be funded by the levy of assessments." It therefore seems inevitable that an assessment against any parcel that is disproportionately low in relation to the benefits conferred thereon (that is, a discount) would lead to an impermissibly high assessment against one or more other parcels. This would be a fatal flaw in such a system.

As a peripheral point, I find the use of the term "discount" troublesome. This term often connotes a payment that reflects less than value received. The first standard dictionary definition of the word is "a reduction made from the gross amount or value of something." (Webster's New Collegiate Dict. (1979) p. 323.) Proportionality in a closed system would prohibit this form of discount.[1] However, any term that merely identifies a reduced charge for a reduced benefit would be acceptable. Thus, when churches and residences within the PBID have little interest in, or benefit derived from, street fairs and other business development activities, their reduced levy is not a "discount" in the normal sense, but is simply a proper adjustment to reflect that limited value is received. There are many terms other than "discount" that would better reflect this correct approach.

This leads to yet another point of full agreement with the majority opinion. The failure of Dahms's evidentiary showing ultimately must lead to the rejection of his claim. While the district bears the initial burden of showing proportionality (which means not too high and not too low), they presented the 40-40-20 plan as a plausible starting point for their assessments, taking

---

[1] In an "open" system, where district assessments might be augmented by general tax revenues, all parcels within the district could be assessed less than the cost of their respective benefits. If such reductions were applied proportionately (e.g., a 5 percent reduction for each parcel), the system would pass muster. It is the "open" system that justifies the additional requirement that a contested assessment be "proportional to, and *no greater than*, the benefits conferred on the property or properties in question." (Cal. Const., art. XIII D, § 4, subd. (f), italics added.) Without that mandate, all parcels could be overassessed in an "open" system, with the excess revenues given to a city's general fund. This is prohibited. Assessments must be "proportional to" and "no greater than" the benefits conferred, but they can be less than the benefits conferred, if the reductions are proportional.

into account certain physical features of each parcel. They then adjusted this basic plan to reflect identified specific uses of parcels within the district (for example, residences and nonprofits). This categorical approach to assessments on parcels should generally be adequate to meet the district's burden of showing proportionality. In response, Dahms has protested and complained, but he has done little more. The majority's correct analysis of his "evidence" need not be repeated here. Dahms's inadequate showing simply leads to the conclusion that the better evidence in the record supports the PBID. I therefore join in the majority's conclusion that the decision of the trial court must be affirmed.

A petition for a rehearing was denied June 8, 2009, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 22, 2009, S174096. George, C. J., did not participate therein.