Filed 2/2/15  Marriage of Gartman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re Marriage of MICHELLE P. AND JON GARTMAN | C071200 |
| MICHELLE P. GARTMAN, | (Super. Ct. No. 160867) |
| Appellant, | |
| v. | |
| JON GARTMAN, | |
| Respondent. | |

Michelle P. Gartman appeals from a post judgment order denying her motion to modify spousal support and her request for attorney fees.  Michelle contends the trial court misapplied the law regarding changed circumstances and failed to make the relevant, statutory findings for denying both her motion to modify spousal support and her request for attorney fees.

1

Michelle elected to proceed on an appellant's appendix. (Cal. Rules of Court, rule 8.124.) Thus, the appellate record does not include a reporter's transcript, agreed statement, or settled statement of the hearings in this matter. This is referred to as a judgment roll appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.) On the face of this record, no error has been established. Accordingly, we affirm the trial court's orders.

FACTS AND PROCEEDINGS

A.    2008 Judgment

In 2008, a trial was held to resolve several disputed issues regarding dissolution of the parties' marriage. One of the issues litigated was spousal support. In support of their respective positions, Michelle and Jon each filed a current income and expense declaration. In her declaration, Michelle declared her estimated monthly expenses were $8,439. Michelle also declared her monthly income was investment income she received from "Wolf Pack, LLC" (hereinafter Wolfpack) which averaged approximately $8,333 each month; she also had real estate valued at approximately $700,000.

In his income and expense declaration, Jon declared his average monthly income to be $17,303 in salary or wages, approximately $16,666.67 in bonuses, and $1,000 in dividends or interest income. Jon also had $2,000 in deposit accounts and $450,000 in real and personal property. Jon's estimated monthly expenses in March 2008 totaled $9,450.

Following trial the court issued a tentative decision, which in July 2008 was incorporated into a judgment dissolving the parties' marriage. The judgment "confirmed to [Michelle] as her separate property . . . [a]ll interest in Wolf Pack LLC as well as any post separation Wolf Pack disbursements." The judgment also included an order for postjudgment spousal support, payable to Michelle as follows: "(a) $3,000.00 per month and 30% of [Jon's] annual bonus to commence on April 1, 2008 and to end on March 31, 2013. The bonus shall be determined for the current year by reference of the preceeding

2

[*sic*] year.  For example, the 2008 spousal support bonus component shall be one twelfth of the 2007 bonus.

"(b)  $2,000.00 per month and 20% of [Jon's] annual bonus to commence on April 1, 2013 and to end on March 31, 2018.

"(c)  $1,000.00 per month and 10% of [Jon's] annual bonus to commence on April 1, 2018 and to end on March 31, 2023.

"(d)  Spousal support shall terminate on the death of either party or the remarriage of [Michelle].

"(f)  The factors considered by the court in determining spousal support are as found in Exhibit 'A' attached hereto."

B.      <u>Michelle's</u> <u>Motion</u> <u>to</u> <u>Modify</u> <u>Spousal</u> <u>Support</u>

On September 1, 2011, Michelle filed a motion to modify spousal support, and sought $10,000 in attorney fees.  In support of her motion, Michelle declared that she was no longer receiving the monthly income from Wolfpack.  She explained that Wolfpack was a "Family Limited Partnership" created by her sister and her sister's husband. Michelle's sister and her sister's husband "graciously named several family members, including [Michelle], as proportional beneficiaries of Wolfpack," but Michelle had no control over the distribution of funds from Wolfpack.

As of 2010, Michelle declared, her sister and her sister's husband had liquidated all of Wolfpack's assets.  Accordingly, Michelle would no longer be receiving distributions.  This, Michelle argued, was a change of circumstances warranting a modification of spousal support.  It was her understanding that in 2008, when the trial court determined the amount of spousal support Jon would pay, "[t]he court knew that, for so long as I received funds from Wolfpack, this would provide a source of income that would be combined with the spousal support I received."  Michelle further argued

3

that without the monthly income from Wolfpack, she was no longer able to maintain the marital standard of living, which she believed Jon continued to enjoy.

Michelle described herself as "an elderly woman (now 60 years old)" who recently had surgery and radiation treatment for breast cancer. She also described her efforts to become self-supporting, which by then included purchasing "a small boutique" in the area in which she lives. It was Michelle's belief that if the trial court did not increase Jon's monthly support obligation, she would be required to live on less than $4,000 each month (plus 30 percent of any bonus Jon receives), while Jon's monthly income "could be as much as $15-30,000. . . ."

Michelle declared her current monthly income to be limited to the spousal support she received from Jon and approximately $300 from a rental property in New Hampshire. Michelle also identified approximately $5,000 to $10,000 in deposit accounts, as well as assets whose value she estimated to be between $290,000 and $355,000. Michelle estimated her monthly expenses to be approximately $12,610. She also declared that she already paid her attorney "over $25,000" and continued to owe him "over $10.000."

Jon opposed Michelle's motion. In support of his opposition, Jon declared it was his recollection that at the trial in 2008, Michelle "claimed that she would not have the Wolfpack income and was asking that support be based on her not having any income, or at most marginal income." Jon also declared that his "financial condition [was] much worse" than it was when judgment was entered in 2008. Jon received no bonuses in 2008, 2009, or 2010 (though he received a $49,950 bonus in 2011), and his only increase in salary since 2008 was a 2.4 percent increase in 2010.

In his declaration, Jon also explained that he currently had mortgages on three homes and each of them had a current value that was less than the debt on the property. He rented those homes he did not live in, but the rents did not cover the monthly expenses. Jon took out a loan to make the $238,040 equalization payment to Michelle ordered by the court in the 2008 judgment, and when the stock market "dropped

4

significantly" he "had to sell everything to pay off the loan." Jon also previously cosigned car loans for the parties' adult daughter, which he was now paying, and he was forced to liquidate "most of the retirement accounts" to "make ends meet and avoid default on the various loans [he] assumed in the divorce." Accordingly, Jon's retirement accounts were reduced to approximately $155,000.

In sum, Jon's average monthly income (including overtime) at the time of trial was $22,146. He was losing, on average, $500 each month on his rental properties, and his assets were valued at negative $403,233. Jon's estimated and actual monthly expenses totaled $22,274, including spousal support and the car payments for their adult daughter's car.

In his trial brief, Jon argued that the elimination of Michelle's monthly distributions from Wolfpack was not a changed circumstance. Jon said, "there is nothing in the judgment that indicates that the court considered the Wolfpack income in setting support or that the court based support on the anticipation that [Michelle] would continue to receive Wolfpack income indefinitely." Instead, Wolfpack was valued as a "fixed asset" worth "less than $300,000" and awarded to Michelle as her separate property. Jon noted that award was made at Michelle's request, that in 2008, Michelle argued not to have the Wolfpack dividends treated as income.

Jon also argued that, since the judgment was entered in 2008, Michelle's monthly expenses had increased from $9,000 to $12,610. At the same time, his "income, assets, and lifestyle" took a "dramatic downward turn." Moreover, according to Jon, despite being ordered to become self-supporting, Michelle's efforts to do so had been minimal.

C.    Trial and Posttrial Motions

Trial on Michelle's motion took place on February 8, 2012. Both parties were represented by counsel and both parties testified; no court reporter was present. According to the minutes prepared by the courtroom clerk, the trial court "advise[d]

5

counsel that it [would] treat the [Family Code section] 4320 factors previously made as baseline," and counsel for Jon waived his opening statement, "as his position [was] covered in his Trial Brief." The parties also stipulated "that the income [Michelle] was receiving from [Wolfpack] [had] terminated, and [Michelle] was not involved with distribution of [Wolfpack] assets."

In closing, counsel for Michelle argued "the findings made earlier regarding the [Family Code section] 4320 factors by and large, have not changed." Michelle's earning capacity continued to be limited "due to the time she spent in the household" and she was making efforts to become self-supporting.

Jon's counsel argued Michelle failed to show changed circumstances. She had not made sufficient efforts to become self-supporting. She received $175,000 from Wolfpack, plus the $238,000 equalization payment in 2008, and had assets totaling $210,000 "in retirement." He argued attorney fees were not appropriate and he requested a written statement of decision. The court took the matter under submission.

On February 14, 2012, the trial court issued its tentative decision, noting that the decision "shall be the Statement of Decision unless within ten days either party specifies controverted issues or makes proposals not covered by this Tentative Decision as required by Rule 232(2) [*sic*]." In its tentative decision, the court denied Michelle's request to modify spousal support and denied her request for attorney fees. The court found, "The alleged change in the factors is a change in [Michelle's] income. The change alleged is primarily the depletion and loss of income from an asset awarded to [Michelle] as her separate property described in the judgment as Wolfpack. [Michelle] alleges Wolfpack was considered at the time of the judgment to be a source of support income to [Michelle].

"[Michelle] is incorrect. The Wolfpack asset, at [Michelle's] request, was awarded to her as her separate property. It was considered by the court pursuant to Family Code Section 4320 (e) as an asset for the purpose of determining spousal support.

6

[Michelle] argues that the amount of spousal support ordered in the judgment, if it did not include the Wolfpack income, would be so low as to amount to an abuse of discretion by the court pursuant to Family Code Section 4320 (d). This argument should have been addressed to the court at the time of the judgment. The loss in value and income to Wolfpack provides no evidence for a finding of a substantial change to the factor described in Family Code [section] 4320 (d).

"C. There was relevant evidence that there has been a substantial change in other income as to both parties pursuant to Family Code Section 4320 (d). These changes in income to both parties was in proportion to their income at the time of judgment and do not constitute a basis for a change in spousal support.

"2. ATTORNEYS FEES AND COSTS

"A. This motion for a change in spousal support was based on an erroneous reading of the judgment. [Michelle's] motion for attorney's fees is denied."

Michelle filed objections to the tentative decision/proposed statement of decision, asking the court to clarify several of the statements made in its tentative decision/proposed statement of decision. She also filed a "Notice of Intention to Move for a New Trial." The record does not contain a ruling on her motion for a new trial, but the trial court "overruled" Michelle's objections and on March 15, 2012, adopted the tentative decision as its statement of decision. On April 6, 2012, the findings and order after hearing were filed, incorporating the court's prior rulings. Michelle appeals from that order. Because no court reporter was present at the trial on her motion, Michelle moved to proceed with a settled statement. The trial court denied her motion, finding "[a] settled statement is not viable because the Judge and one of the attorneys are missing." Michelle then elected to proceed with an appendix pursuant to California Rules of Court, rule 8.124.

7

On appeal, we must presume the trial court's rulings are correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, we must adopt all inferences in favor of those rulings, unless the record expressly contradicts those inferences. (*See Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.)

It is the burden of the appellant to provide an adequate record for us to assess claims of error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) When an appeal is on the judgment roll, we must conclusively presume evidence was presented that is sufficient to support the court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521.) "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." (*Riley v. Dunbar* (1942) 55 Cal.App.2d 452, 455.)

With these rules in mind, we consider Michelle's claims of error.

A.      Changed Circumstances

Michelle first claims the trial court "misapplied [the] 'Change of Circumstances' Rule." In essence, Michelle claims the facts are undisputed and her loss of monthly distributions from Wolfpack was a changed circumstance as a matter of law. Accordingly, she contends, we should review the decision *de novo*. We disagree.

To support her argument Michelle contends the trial court *must* have considered the Wolfpack distributions as income when the court set spousal support at $3,000 per month, plus a percentage of Jon's bonus. Otherwise, according to Michelle, the support order was too low and an abuse of discretion. She also argues that nothing in the 2008 judgment indicates the trial court "did not take into account the Wolfpack income distributions . . . when it set spousal support. . . ." Finally, Michelle argues the court must

8

have considered her Wolfpack distributions as income because Jon used those distributions to calculate Michelle's monthly income when opposing her motion for reconsideration of the 2008 ruling. Michelle's arguments lack merit.

The parties stipulated at trial that Michelle was no longer receiving dividends from Wolfpack. Thus, that fact was not disputed. Whether that was a changed circumstance, however, was very much in dispute. Resolution of that dispute rests almost entirely on evidence presented at the trial, as well as the trial court's own recollection of what it took into account when setting support in 2008. Accordingly, we cannot review the issue without also reviewing the evidence adduced at trial; without a reporter's transcript, however, we are precluded from reviewing the evidence adduced at trial. We must, therefore, conclusively presume that whatever evidence was necessary to sustain the court's decision *was* adduced at trial. (*Ehrler, supra,* 126 Cal.App.3d at p. 154.)

B.    Findings Under Family Code Sections 4320 and 2030

Michelle also claims the trial court "erred in refusing to make findings under [Family Code] section 4320" and "in refusing to make findings under [Family Code] section 2030." Both of these claims fail because neither of them is supported by any meaningful argument or citations to relevant legal authority. (*People v. Hardy* (1992) 2 Cal.4th 86, 150 [a reviewing court need not address any issue purportedly raised without argument or citation to relevant authority]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 [merely setting forth general legal principles without specifically demonstrating how they establish error is insufficient to raise a cognizable issue on appeal]; *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 639 ["It is the duty of counsel to support his claim by argument and citation of authority. [A reviewing court is] not obliged to perform the duty resting on counsel"].)

9

C.    Attorney Fees

Michelle also contends the trial court applied the incorrect legal standard in refusing her request for attorney fees. We need not consider this argument either because it is presented under the same heading as Michelle's claim that the trial court erred in refusing to make findings under Family Code section 2030. (Cal. Rules of Court, rule 8.204(a)(1)(B); see *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 470 [appellate court need not consider claims appended to other claims].) In any event, Michelle fails to support the claim with any meaningful argument or citation to relevant legal authority. (*People v. Hardy*, *supra,* 2 Cal.4th at p. 150; *Guthrey v. State of California*, *supra*, 63 Cal.App.4th at pp. 1115-1116; *Estate of Hoffman*, *supra,* 213 Cal.App.2d at p. 639.)

DISPOSITION

The orders of the court are affirmed.


                                        HULL            , J.



We concur:



      RAYE            , P. J.



      BLEASE         , J.


10