Filed 3/3/21  P. v. Allen CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DONTAE ALLEN,<br><br>        Defendant and Appellant. | A159128<br><br>(San Francisco County<br>Super. Ct. No. SCN227459) |

Defendant and appellant Dontae Allen (Appellant) appeals following his conviction for first degree murder.  He claims the trial court erred in admitting certain evidence, there was insufficient evidence to support a felony murder theory, and the prosecutor committed misconduct during oral argument.  We affirm.

PROCEDURAL BACKGROUND

In May 2017, the San Francisco County District Attorney filed an information charging Appellant with the murder of Preston Bradford (Pen. Code, § 187, subd. (a)), second degree robbery (Pen. Code, § 211), and being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)).  The information also alleged personal discharge of a firearm (Pen. Code, § 12022.53, subd. (d)).

In August 2017, the trial court dismissed the robbery charge.

1

In November 2019, a jury found Appellant guilty of first-degree murder and being a felon in possession of a firearm, and found true the enhancement. In December, the trial court sentenced Appellant to prison for 50 years to life, plus a concurrent three-year term.

## FACTUAL BACKGROUND

The victim, Preston Bradford (victim), left his house at about 12:30 a.m. early in the morning of February 15, 2017. He told his wife he was going to the store. Instead, the victim spent time with his girlfriend and then dropped her off at 2:06 a.m. Surveillance video then showed Appellant getting into the victim's car at 2:08 a.m. on Fillmore Street in San Francisco. Appellant was wearing a black hoodie, white pants, and white shoes. The victim drove off; surveillance video showed two people in the car.

The victim's car crashed at 2:13 a.m. Surveillance video showed a person run from the car. An eyewitness testified he saw a person wearing both light and dark clothing running from the car; the car's passenger-side door was open. The victim was slumped over the center console with fatal gunshot wounds to his head and chest. Casings from a .40 caliber Glock handgun were found in the vehicle. The police department's crime scene investigator opined the shooter was sitting in the front passenger seat.[1]

The victim's wife testified he normally wore a black watch with diamonds and took his wallet when he went out. The victim's wife never saw the watch or wallet again.

The police found Appellant's phone on the ground outside the victim's car. A text message sent on the phone at 3:20 a.m., a bit more than an hour

---

[1] A defense expert opined one could not determine with certainty from the physical evidence whether the casings were fired from a Glock firearm or whether the shooter was in the front passenger seat. He did not dispute the evidence was consistent with those conclusions.

after the shooting, stated, "This is lump Preston I left my phone in yo car, check yo car for me." Other text messages retrieved from Appellant's phone showed he had arranged to purchase a .40 caliber Glock handgun a little more than a month before the shooting. There was also a text dated January 31, 2017, in which Appellant said, "I'm broke," and a text dated February 13, in which Appellant stated he needed money to pay child support.

When interviewed by the police, Appellant admitted he was the person shown getting into the victim's car on Fillmore Street prior to the shooting, but he claimed the victim had given him a ride to his own car and dropped him off. The claim that the victim dropped Appellant off at his car was inconsistent with the surveillance video footage.

## DISCUSSION

I.    *No Error in Admission of Evidence Regarding the Victim's Watch*

Over Appellant's pre-trial objection, the victim's wife testified at trial regarding a "black watch with diamonds around the face of it" owned by the victim. She testified the watch was a wedding gift he wore "if he was going out somewhere," but not every day. He generally left the watch on a dresser in their bedroom when he was not wearing it. She agreed with the prosecutor's characterization that the watch "would either be on [the victim's] wrist or regularly on his dresser." "Immediately after" the murder of the victim she looked for the watch "[a]round the whole house," but she never found it. She had last seen the watch on February 13, 2017, essentially the day before the murder in the early morning hours on February 15.[2]

---

[2] The victim's wife also testified the victim regularly carried a wallet with his identification and a bank card. The identification was found in the console of the car after the murder, but the victim's wife never saw the wallet again. The testimony about the watch and wallet is relevant to the sufficiency of the

3

Respondent argues the evidence was relevant because it allowed the jury to infer that the victim was wearing the watch the night he was murdered and, further, that Appellant shot the victim with the intent to rob him of the watch. Appellant contends the victim's wife's testimony was not admissible under Evidence Code section 1105[3] as evidence of the victim's habit with respect to the watch.[4]

Section 1105 provides, "evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom." " ' "Habit" means a person's regular or consistent response to a repeated situation. "Custom" means the routine practice or behavior on the part of a group or organization that is equivalent to the habit of an individual.' " (*People v. Memro* (1985) 38 Cal.3d 658, 681, fn. 22, overruled on another ground by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; see also *Bowen v. Ryan* (2008) 163 Cal.App.4th 916, 926.) "The question whether habit evidence is admissible is essentially one of threshold relevancy [citation]; it is addressed to the sound discretion of the trial court." (*People v. McPeters* (1992) 2 Cal.4th 1148, 1178 (*McPeters*); accord *People v. Hughes* (2002) 27 Cal.4th 287, 337 (*Hughes*).)

---

evidence of a robbery to support the felony murder instruction (see Part III, *post*).

[3] All undesignated statutory references are to the Evidence Code.

[4] Appellant also asserts in passing that the evidence should have been excluded under section 352. But Appellant has identified no *undue* prejudice from admission of the evidence. Instead, the prejudice to Appellant from admission of the evidence was due to its legitimate probative value as evidence supporting an inference Appellant murdered the victim during a robbery. (See *People v. Doolin* (2009) 45 Cal.4th 390, 439 (*Doolin*) [" 'The prejudice that section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' " ' "].)

We conclude "there was 'evidence of repeated instances of similar conduct' sufficient for the trial court to conclude a habit was present." (*McPeters*, *supra*, 2 Cal.4th at p. 1178.)  Appellant frames the question as whether there was sufficient evidence the victim wore the watch every day, and Respondent frames the question as whether there was sufficient evidence the victim wore the watch whenever he went "out"—apparently meaning outside the house for something other than a minor errand.  Those framings unnecessarily complicate the matter.  Regardless of whether the victim's wife provided sufficiently certain testimony of the victim's habit with respect to *when* he wore the watch, she did testify the watch was always or almost always either on the victim's wrist or on a dresser in their bedroom.  Thus, given that she also testified she saw the watch a day before the murder and could not find the watch afterwards, the factfinder could reasonably infer from the evidence of the victim's habit that he was wearing the watch the night he was murdered.

The trial court did not abuse its discretion in admitting the challenged testimony.  (*Hughes*, *supra*, 27 Cal.4th at p. 337.)

II.  *No Prejudicial Error in Admission of Text Messages Referencing Appellant's Finances*

Appellant contends the trial court erred in admitting into evidence two text messages from his phone that made reference to his finances.  We agree the evidence was inadmissible, but the error was harmless.

At trial, the court admitted into evidence a binder with print outs of over 1800 text messages recovered from Appellant's phone between November 24, 2016 and February 15, 2017 (the day of the murder).  As relevant to Appellant's claim on appeal, on January 31, 2017, Appellant texted a friend, asking "Where you at[?]"  The friend responded that he was in a work meeting and asked Appellant, "what's good?"  Appellant responded,

5

"I'm broke[.]" Then, on February 13, essentially the day before the murder, Appellant texted someone named "Mister" and asked "What time you get off[?]" "Mister" responded with a time and Appellant texted, "Alright because I need that money to pay child support." "Mister" replied in 20 seconds, "Got u bro."

"Evidence of a defendant's poverty or indebtedness, without more, is inadmissible to establish motive for robbery or theft because it is unfair to make poverty alone a ground of suspicion and the probative value of the evidence is deemed to be outweighed by the risk of prejudice." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1024 (*Edelbacher*); accord *People v. Clark* (2011) 52 Cal.4th 856, 929 (*Clark*); *People v. Cornwell* (2005) 37 Cal.4th 50, 96 (*Cornwell*), disapproved on another ground in *Doolin, supra*, 45 Cal.4th 390.)

As the language used by the Supreme Court in *Edelbacher* (and other cases) reflects, the rule generally excluding evidence of poverty is rooted in section 352, which provides that a "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (See also, e.g., *People v. Hogan* (1982) 31 Cal.3d 815, 854, disapproved on another ground in *People v. Cooper* (1991) 53 Cal.3d 771, 836 [the "evidence of poverty . . . should have been excluded pursuant to the . . . section 352 objection"]; *People v. Wilson* (1992) 3 Cal.4th 926, 939 ["The probative value of the evidence of debt therefore was outweighed by its prejudicial effect, and this evidence should not have been admitted at trial."].)

Thus, we understand the California Supreme Court's cases to establish a *strong presumption* that evidence of a defendant's poverty should be

6

excluded under section 352.  The necessary corollary to that proposition is that there is no absolute rule excluding such evidence, as the court has made clear.  "Evidence of poverty or indebtedness is admissible . . . in a variety of circumstances, such as to refute a defendant's claim that he did not commit the robbery because he did not need the money [citation], or to eliminate other possible explanations for a defendant's sudden wealth after a theft offense [citations]."  (*Edelbacher, supra,* 47 Cal.3d at p. 1024; accord *Clark, supra,* 52 Cal.4th at p. 929.)  Respondent acknowledges the general rule prohibiting admission of evidence of a defendant's poverty, but argues, "Evidence of an immediate need to generate cash closely tied to the time period of the murder was properly admitted."

We need not determine whether in the proper case evidence of a defendant's acute financial need immediately before a crime could properly be admitted, because the text messages at issue in the present case did not demonstrate any such acute financial need.  Contrary to respondent's assertion on appeal, Appellant did *not* send a text message stating he was "broke" on February 13, 2017.  Instead, that text message was sent two weeks before, on January 31.  There are over 1800 text messages in People's Exhibit 36, both sent and received.  Appellant made no statement expressing financial desperation in the preceding 1200 text messages dating back to November 24, 2016, and he made no more such references in the 600 text messages that followed.[5]  Given the absence of other similar text messages, the January 31 "I'm broke" text message was not properly admitted as

---

[5] It is not important to specify how many of those were text messages sent by Appellant, rather than text messages he received.  Suffice it to say that he sent a very large number of text messages in the almost three-month period reflected in People's Exhibit 36, and he only made *one* reference to being in financial distress.

evidence of proximate financial distress in the early morning hours of February 15. People in difficult financial situations can be expected to comment on their finances, and it would undermine the presumption against admission of evidence of a defendant's poverty were such statements admitted absent unusual circumstances. The trial court abused its discretion in failing to exclude the January 31 text message under section 352.

The trial court also abused its discretion in failing to exclude the February 13, 2017 text message. Although the day before the night of the murder Appellant sent a text message stating, "Alright because I need that money to pay child support," he immediately received a response, "Got u bro." Thus, the full context demonstrates that Appellant sought to collect a debt from a friend or acquaintance, and the debtor assured Appellant of payment.

Although the trial court erred in admitting Appellant's text messages regarding his finances, the error was harmless. Appellant asserts the error was of "federal constitutional dimension," requiring review for prejudice under the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24. However, Appellant cites no authority supporting that assertion. Because, as explained previously, the presumption against admission of evidence of a defendant's poverty is an application of section 352, the trial court's error was of state evidentiary law, requiring review for prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818. That is, the error requires reversal if, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.)

In the present case, the text messages presented a lower risk of prejudice because they did not show that Appellant was financially desperate at the time of the murder. Indeed, other text messages reflected that Appellant was employed at the time. And, as noted previously, Appellant made only one reference to being "broke," or an equivalent comment, in his numerous text messages over two and a half months. The jury could have inferred from the text messages that Appellant had low income, but the text messages provided no reason to think Appellant had a great pressing need that may have motivated the crime. And the evidence of Appellant's guilt was overwhelming. Indeed, Appellant implicitly concedes the evidence he was the killer was overwhelming; he argues only that the jury might not have accepted the felony murder theory but for the erroneously admitted evidence.

Appellant's prejudice argument is premised on his assumption that both the evidence of the watch and the text messages should have been excluded. However, because the trial court properly admitted the testimony about the watch, it is likely the jury believed the murderer took the victim's watch and wallet—Appellant has identified no other reasonable explanation for the disappearance of those items. From there, it is a logical inference that the murderer intended to take those items at the time of the murder (see Part III, *post*). It is not reasonably probable the jury would have failed to make that inference if the trial court had excluded the two text messages challenged on appeal.[6]

---

[6] Appellant correctly observes the prosecutor repeatedly relied on Appellant's "I'm broke" text message in his closing arguments. He cites the decision in *People v. Minifie* (1996) 13 Cal.4th 1055, in which the Supreme Court concluded the prosecutor's argument "tip[ped] the scale in favor of finding prejudice." (*Id*. at p. 1071.) However, that case involved improperly excluded evidence that the defendant's life had been threatened, offered to support his self-defense claim. (*Id*. at pp. 1063, 1071.) While we agree prosecutorial

III.    *There Was Sufficient Evidence the Victim Was Killed During a Robbery*

Appellant contends the trial court erred in instructing the jury on the felony murder theory because the evidence was insufficient to support the instruction.  We disagree.[7]

"A trial court must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof.  [Citation.]  We review the trial court's decision de novo.  In so doing, we must determine whether there was indeed sufficient evidence to support the giving of [the challenged] instruction.  Stated differently, we must determine whether a reasonable trier of fact could have found beyond a reasonable doubt that defendant committed murder based on a" felony-murder theory.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1206 (*Cole*).)

"Murder is the unlawful killing of a human being . . . with malice aforethought."  (Pen. Code § 187, subd. (a).)  "All murder that is perpetrated by . . . willful, deliberate, and premeditated killing, or that is committed in the perpetration of, or attempt to perpetrate," certain specified felonies, including robbery, "is murder of the first degree."  (Pen Code § 189, subd. (a).)  " '[T]he felony-murder rule makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state' vis-à-vis an intent to kill.  [Citation.]  'For conviction, the prosecution must establish that the defendant, either before or during the commission of

---

argument can justify a finding of prejudice in a close case, we do not believe this was a close case on the prosecution's felony-murder theory, given the disappearance of the watch and wallet.

[7] Appellant does not contend that dismissal of the robbery count before trial precluded the prosecution from relying on a felony-murder theory if supported by the evidence at trial.

the acts that caused the victim's death, had the specific intent to commit one of the listed felonies.' " (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1021 (*Wear*).)

"Robbery is the felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code § 211.) " '[T]o find a defendant guilty of first degree murder based on a killing perpetrated during a robbery [or attempted robbery], the evidence must show the defendant intended to steal the victim's property either before or during the fatal assault.' " (*Wear*, *supra*, 44 Cal.App.5th at p. 1022.)

It is well-established that, " ' " '[w]hen one kills another and takes substantial property from the victim, it is ordinarily reasonable to presume the killing was for purposes of robbery.' " ' " (*People v. Potts* (2019) 6 Cal. 5th 1012, 1030; see also *People v. Johnson* (2015) 60 Cal.4th 966, 988 ["The jury could readily conclude defendant intended to steal when he entered the victim's house with a weapon and beat her to death. It did not have to conclude he killed the victim for no apparent reason and only then decided to steal."]; *People v. Marshall* (1997) 15 Cal.4th 1, 35 ["If a person commits a murder, and after doing so takes the victim's wallet, the jury may reasonably infer that the murder was committed for the purpose of obtaining the wallet, because murders are commonly committed to obtain money."].)

Appellant does not deny the jury could properly make an inference of intent to steal if there was a basis to find the victim had his watch and wallet with him when he was murdered. Instead, Appellant repeats his argument that an inference the victim had those items would have been "speculation," essentially because the victim's wife did not testify with absolute certainty that the victim had his watch and wallet. The argument fails. As explained

11

previously, the testimony was sufficient to support an inference the victim had those items when he was murdered; the only speculation is Appellant's suggestion that the disappearance of those items on February 14 or 15 may have been unrelated to the murder.

Because a reasonable trier of fact could have found beyond a reasonable doubt that Appellant murdered the victim while committing a robbery, the trial court properly instructed the jury on the felony-murder theory. (*Cole*, *supra*, 33 Cal.4th at p. 1206.)[8]

IV.     *Appellant Has Not Shown Prejudicial Prosecutorial Misconduct*

Appellant presents various claims of error based on the prosecutor's closing arguments. Appellant largely has failed to show misconduct, and he has not shown any improper argument was prejudicial, individually or cumulatively.

A.     *Comments Placing Jurors in Appellant's Shoes*

Appellant argues the prosecutor made statements improperly "asking the jurors to put themselves in the shoes of" Appellant. For example, the prosecutor asked, "When is the last time you got caught on surveillance camera leaving a murder?" Appellant cites no authority such argument was improper. Instead, he cites inapposite authority prohibiting "an appeal for sympathy for the victim," which "is out of place during an objective determination of guilt." (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1057.) The argument at issue is also distinguishable from that in *People v. Rodgers* (1979) 90 Cal.App.3d 368, in which the prosecutor suggested the defendant was guilty because he had been accused and asked the jurors to consider

---

[8] Because sufficient evidence supported the felony-murder instruction, we need not address whether Appellant's conviction may also be upheld on the ground that the jury could also have relied on a premeditated murder theory.

12

whether they would hire the defendant as a babysitter. (*Id.*, at p. 371.) Appellant has not shown the prosecutor's comment was an attempt to play on the jury's sympathies or to gain some other unfair advantage. In essence, the prosecutor's comment simply sought to emphasize that the evidence of Appellant's guilt was overwhelming.

B.   *Disparagement of Defense Counsel*

Appellant argues, "[t]he prosecutor made a number of jury arguments that were attacks on defense counsel's integrity, suggesting counsel knew his client was guilty." For example, the prosecutor argued, "When you have presented no evidence to show this man is anything but completely guilty, you start throwing a whole bunch of garbage that is misleading and distracting against the wall and hoping something sticks. Answer none of the real questions." We agree the language used by the prosecutor to describe opposing counsel's defense strategy was harsh and disrespectful, but Appellant identifies no comments that constitute prohibited disparagement. (See *People v. Young* (2005) 34 Cal.4th 1149, 1193 ["prosecutor's characterization of [defense counsel's] argument as 'idiocy' [was] fair comment on counsel's argument"]; *People v. Wash* (1993) 6 Cal.4th 215, 266 [prosecutor is " 'entitled' " to make " 'vigorous argument' "].)[9] For example, none of the statements highlighted by Appellant "implied that defense counsel had fabricated evidence" (*Wash*, at p. 265) or "accused counsel of lying to the jury" (*Young*, at p. 1193). (See also *People v. Zambrano* (2007) 41 Cal.4th 1082, 1154–1155, disapproved on another ground in *Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.)

---

[9] We do observe that "[p]rosecutors who engage in rude or intemperate behavior, even in response to provocation by opposing counsel, greatly demean the office they hold and the People in whose name they serve." (*People v. Espinoza* (1992) 3 Cal.4th 806, 820.)

The prosecutor's comments arguably implying defense counsel knew Appellant was "obviously guilty" were closer to the line of what is permissible. It is "improper for the prosecutor to argue to the jury that defense counsel does not believe in his client's defense." (*People v. Thompson* (1988) 45 Cal.3d 86, 112 (*Thompson*).) Such argument is improper because it "directs attention to largely irrelevant matters and does not constitute comment on the evidence or argument as to inferences to be drawn therefrom." (*Ibid.*) In the present case, the prosecutor's argument was essentially that defense counsel was unable to employ a more effective defense strategy because, as defense counsel knew, the evidence against Appellant was overwhelming. On balance, we believe the focus of the argument was the strength of the evidence against Appellant rather than an improper comment on what defense counsel believed. Appellant has not shown the prosecutor's comments were improper.[10]

C.     Griffin *Error*

Appellant contends the prosecutor improperly commented upon his failure to testify, in violation of *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*). "It is a bedrock principle in our jurisprudence that one accused of a crime cannot be compelled to testify against oneself. [Citations.] In order that an accused not be penalized for his invocation of this fundamental right, the prosecutor may neither comment on a defendant's failure to testify nor urge the jury to infer guilt from such silence." (*People v. Hardy* (1992) 2

---

[10] We reject Appellant's assertion that the prosecutor's comments expressed "a personal belief in [Appellant's] guilt," which is improper "in part because of the danger that jurors may assume there is other evidence at his command on which he bases this conclusion." (*Thompson, supra*, 45 Cal.3d at p. 112.) Instead, the prosecutor's argument was that the *evidence* overwhelmingly demonstrated Appellant's guilt.

Cal.4th 86, 153–154.) "Pursuant to *Griffin*, it is error for a prosecutor to state that certain evidence is uncontradicted or unrefuted when that evidence could not be contradicted or refuted by anyone other than the defendant testifying on his or her own behalf. [Citations.] We [have] also suggested . . . that it is error for the prosecution to refer to the absence of evidence that only the defendant's testimony could provide. [Citation.] But although ' "*Griffin* forbids either direct or indirect comment upon the failure of the defendant to take the witness stand," ' the prohibition ' "does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or call logical witnesses." ' " (*People v. Hughes* (2002) 27 Cal.4th 287, 371–372; accord *People v. Gomez* (2018) 6 Cal.5th 243, 299.)

Only one of the prosecutor's comments cited by Appellant arguably commented on his failure to testify.[11] The prosecutor argued, "Your client has all these shady text messages. He's broke. Needs money. And, poof, all of a sudden this valuable property goes missing. What is he going to say, one of the Three Stooges was sitting in the back seat, . . . shot the victim, then just flew into the air? [¶] What has he actually presented? Nothing. What

---

[11] Appellant also cites the prosecutor's statement, "He could have had text messages on his phone that said I have good financial standing right now. Instead he is broke and needs that money." That was a comment on what was and was not shown in Appellant's text messages, not a comment on his failure to testify. Appellant also refers to other remarks by the prosecutor quoted earlier in his opening brief, without specifically identifying the challenged remarks or explaining how they constitute *Griffin* error. None of the additional statements quoted on the referenced pages were comments on Appellant's failure to testify. Appellant also references other portions of the prosecutor's argument without providing citations to the record; we do not consider claims not supported by citations to the record. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115; Cal. Rules of Court, rule 8.204(a)(1)(C).)

has he refuted? Nothing." Respondent argues the prosecutor was referring to defense counsel's failure to provide an alternate explanation for the murder, such as that there was another person in the victim's car who may have shot the victim. It is true many of the prosecutor's comments during that portion of his closing argument referred to defense counsel. However, it is also true the prosecutor frequently switched between references to defense counsel and references to Appellant, and the prosecutor had just used "he" to refer to Appellant in saying, "he's broke."

Because the jury *could have* understood the prosecutor's comments as referring to Appellant's failure to testify, the argument was improper under *Griffin*. *People v. Vargas* (1973) 9 Cal.3d 470 (*Vargas*) is on point. In that case, a robbery prosecution, the prosecutor argued there had been no " 'denial' " a robbery had taken place. (*Id.* at p. 476.) The Supreme Court concluded that violated *Griffin*, because "the word 'denial' connotes a personal response by the accused himself" and "the jury *could have* interpreted the prosecutor's remarks as commenting upon defendant's failure to take the stand and deny his guilt." (*Vargas*, at p. 476 [italics added].) Similarly, in the present case, the prosecutor argued, "What has he actually presented? What has he refuted? Nothing." Like the word "denial," the word "refuted" "connotes a personal response by the accused himself." (*Ibid.*)

The case respondent relies upon, *People v. Gomez, supra*, 6 Cal.5th 243, is distinguishable. In *Gomez*, the prosecutor argued the defendant's knowledge about the details of a murder implicated him in the crime. (*Id.* at p. 299.) The Supreme Court concluded there was no *Griffin* error where the prosecutor commented on the lack of evidence the defendant read news articles about the murder, which would have explained his knowledge. (*Gomez*, at p. 299.) The court observed, "[a]lthough [the defendant] argues

16

that only his own testimony could have contradicted the prosecutor's claim that [he] did not read the articles or newspapers in general, [the defendant] could have presented other evidence to that effect. As the trial court explained, '[t]here could, for example, have been evidence that [the defendant] subscribed to the [newspaper], that he was an avid reader and others around him, anyone associated with him knew that he read the paper and commented to others about reading.' " (*Ibid.*) In the present case, the prosecutor did not *only* refer to the absence of evidence of another shooter. Instead, the jury could have understood the prosecutor's argument to refer to Appellant's failure to "refute" the evidence by, for example, identifying another shooter.

Nevertheless, the *Griffin* error was harmless beyond a reasonable doubt. (*Vargas*, *supra*, 9 Cal.3d at p. 478.) *Vargas* emphasized that, "in determining whether prejudicial *Griffin* error has occurred, 'we must focus upon *the extent to which the comment itself might have increased the jury's inclination to treat the defendant's silence as an indication of his guilt.*' " (*Vargas*, at p. 478.) The absence of " 'a statement that silence implied guilt . . . tends to mitigate the independently damaging effect of a comment uttered in violation of the *Griffin* rule.' " (*Vargas*, at pp. 478–479.) Here, the prosecutor's point was that the evidence against Appellant was so overwhelming that any attempt to refute it—by, for example, claiming another person in the car shot the victim—would have been futile. Thus, even though the argument can be construed as a reference to Appellant's failure to testify, in effect it was a comment on the state of the evidence rather than a suggestion that Appellant's silence showed his guilt. (See also *People v. Bradford* (1997) 15 Cal.4th 1229, 1340 [" 'indirect, brief and mild references to a defendant's failure to testify, without any suggestion that an

inference of guilt be drawn therefrom, are uniformly held to constitute harmless error' "]; accord *People v. Boyette* (2002) 29 Cal.4th 381, 455–456.)[12]

D.     *Appeals to Sympathy*

Appellant contends the prosecutor committed misconduct by asking the jury to reflect on the fact that the victim had three children, stating "What's uncomfortable is that this man, the evidence showed, had three children. Burying your father . . . ." Respondent argues the prosecutor was merely commenting on the evidence admitted at trial, although respondent does not identify how the prosecutor's statement was relevant to the determination of Appellant's guilt. The prosecutor's comment was improper: "a prosecutor's argument to the jury that ' "appeal [s] to sympathy for the victim is out of place during an objective determination of guilt." ' " (*People v. Salcido* (2008) 44 Cal.4th 93, 151.) However, there is no "reasonable probability" that the passing reference to the victim's children, of whom Appellant admits the jury was already aware from the evidence at trial, affected the outcome of the trial. (*People v. Amezcua & Flores* (2019) 6 Cal.5th 886, 920.)

Appellant also complains of the prosecutor's reference to the children of a police officer who was a prosecution witness. The prosecutor stated that the officer, upon being called to the scene of the murder, had to get "her kids settled in the house, knowing she was going to be gone for the next 48 hours."

---

[12] We also observe that the trial court instructed the jury that "A defendant has an absolute constitutional right not to testify. He may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way." "[A]bsent some indication to the contrary, we assume a jury will abide by a trial court's admonitions and instructions." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1336.)

The comment had no apparent relevance, but Appellant does not explain how painting the officer in a slightly sympathetic light could possibly have affected the outcome of the trial.

E. *Alleged Vouching for Police Officer Expert*

Finally, Appellant contends the prosecutor improperly "vouched" for his police department expert in arguing that she was "the only real expert. The only expert here that said she wouldn't charge money if I wanted to have a 15-minute conversation with her." Appellant points out that the prosecutor's comments were likely directed at the defense expert, who testified he charged $150 an hour for his work and would have charged to speak with the prosecutor.

"A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. [Citation.] Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. [Citation.] However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' [the] comments cannot be characterized as improper vouching." (*People v. Frye* (1998) 18 Cal.4th 894, 971, disapproved on another ground in *Doolin*, *supra*, 45 Cal.4th at pp. 420–421.)

Appellant forfeited his objection by failing to object below, but, even assuming the claim was preserved, Appellant has not shown misconduct. "[A]lthough counsel may not denigrate the integrity of opposing counsel, an attorney is free to argue that the opinions of paid expert witnesses may be

19

biased." (*People v. Cook* (2006) 39 Cal.4th 566, 614.)  Furthermore, there is no "reasonable likelihood the jury understood" the prosecutor's comment as vouching.  (*People v. Frye, supra,* 18 Cal.4th at p. 970.)  The prosecutor's next comment was that the police department expert was "[t]he only person that actually looked at the property.  The only person that wrote a report.  The only person that did any measurements."  Thus, the prosecutor's argument that his expert was more reliable was based on the facts of the record, " 'rather than any purported personal knowledge or belief.' " (*Frye,* at p. 971.)[13]

F.    *Cumulative Error*

We have concluded the prosecutor committed *Griffin* error and made improper references to the victim's children and the children of a police officer witness.  We have also previously concluded the trial court erred in admitting two text messages that referred to Appellant's financial situation. (Part II, *ante.*)  Nevertheless, considering those errors jointly, it is clear beyond a reasonable doubt the outcome of the trial would not have been more favorable to Appellant had those errors not occurred.  This is not a case in which "[t]he sheer number of the instances of prosecutorial misconduct, together with the other trial errors . . . . created a negative synergistic effect, rendering the degree of overall unfairness to defendant more than that

_____

[13] Appellant also argues "there was no evidence that the sergeant was the only real expert who wouldn't charge money for discussing the facts of the case with the prosecutor."  The expert testified she was a police officer assigned to the crime scenes investigations unit.  The jury could reasonably infer that she, as a public employee, did not charge the prosecutor to discuss the case.  Nevertheless, the prosecutor apparently misspoke in asserting the expert "*said* she wouldn't charge money." (Italics added.)  Appellant forfeited any objection to that minor misstatement—which easily could have been corrected—by failing to make a contemporaneous objection.

flowing from the sum of the individual errors." (*People v. Hill* (1998) 17 Cal.4th 800, 847, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) Appellant has not shown cumulative error.

## DISPOSITION

The trial court's judgment is affirmed.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

SELIGMAN, J.*

(A159128)

_____

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.